Mae Bebb, Plaintiff-Appellee, v. Yellow Cab Company, Defendant-Counterplaintiff-Counterdefendant-Appellant, and John DeVries, Defendant-Counter-defendant-Counterplaintiff-Appellee.
Minnie Dykstra and Anna DeVries, Plaintiffs-Appellees, v. Yellow Cab Company, Defendant-Appellant.

### Gen. No. 53,143.

First District, First Division.

February 2, 1970.

Peter Fitzpatrick and George Kaye, of Chicago (Fitzpatrick & Kaye and Jesmer & Harris, of Chicago, of counsel), for appellant.

Fred Lambruschi, of Chicago (Herbert P. Veldenz and Vera Cuthbert, of counsel), Delbert T. Been, O'Brien, Hanrahan, Wolfe and Been, and Thomas M. Monahan, of Chicago, for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a personal injury and property damage action arising out of a collision between a Yellow Cab and a Chrysler automobile, in which two suits were consolidated for trial before a jury. In the first case, Mae Bebb, the passenger in the taxicab, sued the Yellow Cab Company and John DeVries, driver of the Chrysler, for personal injuries, and John DeVries and Yellow Cab Company both counterclaimed against each other for property damage to their respective vehicles. In the second case, Minnie Dykstra and Anna DeVries, passengers in the automobile driven by John DeVries, sued the Yellow Cab Company for personal injuries. Defendant Yellow Cab Company appeals from judgments entered on the following verdicts:

1. For Mae Bebb against Yellow Cab Company in the sum of $20,000.00 and against Mae Bebb and for John DeVries.

2. For John DeVries against Yellow Cab Company in the sum of $364.94, and against Yellow Cab Company on its counterclaim.

3. For Minnie Dykstra against Yellow Cab Company in the sum of $4,500.00, and for Anna De Vries against Yellow Cab Company in the sum of $250.00.

On appeal defendant Yellow Cab Company contends (1) that the trial court's refusal to direct a verdict for defendant on the counterclaim of John DeVries was prejudicial error; (2) certain comments, admonitions and rulings of the trial judge so influenced the determination of the jury that the Cab Company was denied a fair and impartial trial; (3) that the jury was improperly instructed on the speed statute; and (4) the verdicts exonerating DeVries and against the Cab Company were contrary to the manifest weight of the evidence.

John DeVries testified that on June 7, 1963, around 9:00 a. m., he left his home in Holland, Michigan, with his wife and Mr. and Mrs. Dykstra, to visit relatives in Chicago. At about 2:43 p. m., he was driving his Chrysler Imperial north on Harlem Avenue at about the posted speed limit of 40 miles per hour. The weather was perfect, and his car was in "A-1 condition." He was driving in the center lane, and when he first saw the cab he was about 35 feet from the intersection of Harlem and 71st Street and about 80 feet from the cab. The cab was going south between 10 and 15 miles per hour in the center lane. When the DeVries car approached 71st Street, the cab, without any warning, made a sudden left turn in front of him. DeVries applied his brakes and skidded about 75 or 80 feet before he struck the cab. DeVries did not see any directional signals or indicator lights on the cab. DeVries swung to the left and hit the cab's rear bumper and spun it around. After the impact the DeVries car was facing north and the cab was facing west. There had been no traffic ahead of DeVries, and his last previous stop was at a traffic light at 75th Street. At the moment of impact DeVries was going about 10 or 15 miles an hour.

Plaintiff, Mae Bebb, the passenger in the cab, testified she didn't see anything because she was asleep.

Plaintiff, Minnie Dykstra, a passenger in the Chrysler, was sitting in the rear seat behind her husband. She did not see what happened, and when the car collided "it was such a shock that I pushed out my hand, and with that I saw there was a cab in front of us."

Plaintiff, Anna DeVries, was sitting in the back seat behind her husband with Mrs. Dykstra. She saw the cab before the collision but would make no comment on where the front of her car was with relation to 71st Street at that time. She couldn't say how many lanes were on Harlem or whether the cab was already at 71st Street or north of 71st Street when she saw it. She would make

no comment on how many miles per hour the cab was going.

Onzo Hoosmon, driver of the Yellow Cab, testified that he picked up Mae Bebb at the Englewood station at 63rd and State. He turned south onto Harlem from 63rd Street. Harlem was a four-lane road and has curves south of 63rd Street—the last one being about a block away from 71st Street. When they came out of the last curve, Mae Bebb told him to turn left at 71st Street. He put on his left-turn signal that blinked yellow lights in the front and rear, and got over into the left lane as close as possible in order to turn. When he came up to 71st Street he was going 10 to 15 miles per hour and turned into the south half of 71st Street at that speed so another car could come out if it wanted to. The cab was hit over the right rear wheel and the impact pushed the cab completely around to face west.

James Lhotak testified that he was an eyewitness to the collision. He was driving his car to work and was giving a lift to Skip Marsten. At the time of the collision he was facing east on 71st Street, stopped at a stop sign waiting to turn right to go south on Harlem. He saw the cab before the collision heading south on Harlem about 50 or 60 feet away from the intersection. The cab's left-turn signal was on as it approached 71st and was going about 5 or 10 miles per hour. It slowed and made a normal, not a sudden, left turn into 71st Street. The sound of screeching brakes and skidding called his attention to the northbound Chrysler. It was going about 50 miles per hour in the northbound lane near the yellow line in the center of Harlem and was about 90 feet from 71st Street. The speed limit there was 40 miles per hour. The Chrysler swung over to the right-hand lane and hit the Yellow Cab in the right rear with the right front of the Chrysler. At the time of impact the rear of the cab was in the northbound lane closest to the curb and traveling about 10 to 15 miles per hour. The impact swung it

459

around to make it face west. After the collision he waited for the police. He gave his name and left for work, but Skip stayed at the scene.

Glen Marsten (Skip) substantially corroborated the testimony of James Lhotak. Before the collision he saw the cab on the southbound side of Harlem next to the double yellow line, about two car lengths or 40 feet from the intersection. The cab's left-turn signal was flashing and the cab was going 5 to 10 miles per hour. The cab made a slow, normal left-hand turn into the eastbound lane of 71st Street. Screeching brakes called his attention to the northbound Chrysler. It was 100 feet away from 71st Street, in the northbound lane next to the double yellow line, going approximately 50 miles per hour. The Chrysler went into the curb lane where the impact occurred. The cab was going about 15 miles per hour then. The right rear quarter of the cab was struck and four feet of the cab protruded into the curb lane of Harlem. The rest of the cab was off of Harlem on 71st Street. The impact swung the rear end of the cab around and headed the front of the cab west toward Harlem. After the collision he helped Officer Stanton measure the skid marks from the Chrysler. They came from the lane next to the double yellow line and swerved to the lane next to the curb, ending at the place of impact.

Officer Harry Stanton of the Bridgeview Police Department testified that he investigated an accident at 71st and Harlem on June 7, 1963, at 2:43 p. m. He arrived at 2:45 p. m., and "a Yellow Cab was on the northeast corner, more on 71st St. than on Harlem, and a black Chrysler was on Harlem facing north." The cab was hit in the right rear fender, "just behind the double door," and the Chrysler was damaged in the right front. John DeVries stated to him: "I was traveling north on Harlem about 40 or a little more miles per hour. At the intersection of 71st St. I saw a taxicab making a left turn

460

into 71st east, and applied my brakes and skidded about 60 feet. Unable to stop in time my vehicle struck vehicle number 1 in the right rear fender."

Officer Stanton further testified that the posted speed limit on Harlem was 40 miles per hour. Also, with the aid of a man called "Skip," he measured the skid marks laid down by the Chrysler to be 80 feet, the point of impact being in the northbound lane, six or eight feet from the east edge of Harlem. The police report diagram showed the point of impact to be in the outer lane of traffic, closest to the east curb. He knew where the point of impact was from the debris on the ground. The taxicab left-turn signal lights worked and were still on when he arrived at the scene of the collision.

Defendant Yellow Cab Company's first contention is that the trial court erred in refusing to direct a verdict against John DeVries on his counterclaim. It asserts that "John DeVries was negligent as a matter of law. The Court's refusal to direct a verdict against John De Vries was reversible error not only because it left a false issue in the case but also because it influenced the jury to decide against the cab company on the other claims." Defendant notes that DeVries's negligence was evidenced by his admission that he was traveling "about 40 or a little more miles per hour," his skidding 80 feet, his testimony that the weather was perfect and there was no traffic ahead of him, his admission on cross-examination that he did not see any turning signal, and the testimony of two eyewitnesses that he was traveling 50 miles per hour. Furthermore, the cabdriver's testimony that the cab's left-turn signal was flashing was corroborated by the two eyewitnesses and Officer Stanton, who found it working. According to defendant, all this evidence tends to show DeVries negligent as a matter of law, and "no contrary verdict based on that evidence could ever stand." (Pedrick v. Peoria & Eastern R. Co., 37 Ill2d

494, 229 NE2d 504 (1967).) Authorities include Ill Rev Stats, c 95½, ¶ 166, and Pertolanitz v. Chicago Transit Authority, 44 Ill App2d 256, 194 NE2d 501 (1963). Chapter 95½, Ill Rev Stats, provides:

"166. § 69. Vehicle turning left. The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is so close as to constitute an immediate hazard, but said driver, having so yielded may proceed at such time as a safe interval occurs."

In Pertolanitz v. Chicago Transit Authority, the court found the defendant bus driver's negligence was established by evidence that showed that the bus continued at an increased speed into the intersection despite the bus driver's having seen from 400 feet that a southwestbound automobile was stopped near the center line waiting to make a left turn. The court held this to be a violation of chapter 95½, ¶ 166.

Defendant Yellow Cab Company further asserts that it was prejudiced by the erroneous denial of its motion for a directed verdict against John DeVries since it left a false issue in the case as to his negligence and "pervades all the issues and requires a new trial." It points out that "in particular, the court's submission to the jury of the DeVries counterclaim against the cab company certainly prejudiced the cab company's counterclaim against DeVries and for practical purposes destroyed the cab company's defense that the sole cause of the collision was the negligence of John DeVries." Authorities include Pedrick v. Peoria & Eastern R. Co.; Scerrino v. Dunlap, 14 Ill App2d 355, 144 NE2d 859 (1957); Galatzer v. Schwartz, 26 Ill App2d 398, 168 NE2d 451 (1960) (Abst); and Moore v. Atchison, T. & S. F. Ry. Co., 28 Ill App2d 340, 171 NE2d 393 (1960).

In Scerrino v. Dunlap, the court overruled plaintiff's motion to withdraw from the consideration of the jury the defense that plaintiffs were guilty of contributory wilful and wanton misconduct and submitted to the jury special interrogatories asking whether the plaintiffs were guilty of wilful and wanton misconduct which proximately caused the accident. The reviewing court held this to be reversible error and stated (p 365):

> "The submission of the issue of wilful and wanton conduct of plaintiffs here may, on first consideration, seem harmless, inasmuch as the jury found plaintiffs not guilty thereof in their answer to the interrogatories; nevertheless, since the question of negligence on the part of plaintiffs was also submitted to the jurors by special interrogatory, the jury may well have been led to conclude that plaintiffs were at least guilty of contributory negligence. We find no evidence in the record to support the special finding that plaintiffs were guilty of wilful and wanton conduct, and it was prejudicial error to submit this false issue to the jury."

In Galatzer v. Schwartz, plaintiff's motion for a directed verdict on the issues of contributory negligence and of defendant's negligence at the close of all the evidence was denied. On appeal this denial was held to be improper because the submission to the jury of the issues of negligence and contributory negligence prejudiced the proper resolution of the damage issue.

In Moore v. Atchison, T. & S. F. Ry. Co., the court held (p 355):

> "There was no evidence on which Adair could be found guilty of negligence and it was error to submit an issue as to his negligence."

Plaintiffs contend that the evidence on the issue of DeVries's negligence was controverted by the parties and

463

the witnesses to the occurrence. Plaintiffs assert that any evaluation by the judge of the total evidence produced "required an evaluation of the facts established and the credible weight to be applied to all testimony," and the jury was free to find that either both defendants were guilty of negligence jointly, or that one defendant or the other was the sole proximate cause of the accident.

Plaintiffs assert that the Pedrick case has no application here "since in this case there was more than 'any evidence' of negligence on the part of the Yellow Cab and its agent, Onzo Hoosmon. Mr. Hoosmon's testimony was that when he was at 71st and Harlem, he made a left-hand turn, and that at the time of his turn, the defendant, DeVries, was one block to the south of him," and when Hoosmon was asked if he was looking at the northbound car that was coming, he said, "No. Why should I be looking where they are going?" They note that "if the trial court accepted on face value this testimony of the taxicab driver, it certainly would be a breach of common sense and all physical laws of probability," and "it is quite obvious that when the taxicab made its left turn, the DeVries car could not have been a block away from the taxicab. The left turn was made suddenly without warning in front of the DeVries vehicle."

 . We conclude that the trial court properly denied defendant's motion for a directed verdict on the counterclaim of defendant John DeVries. The test for a directed verdict, as laid down in Pedrick v. Peoria & Eastern R. Co., is as follows (p 510):

> "In our judgment verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

464

We find that all of the evidence, when taken in the light most favorable to John DeVries does not so overwhelmingly show his negligence that no contrary verdict could ever stand. We find no prejudice to defendant Yellow Cab Company in submitting the issue of DeVries's negligence to the jury. This did not tend to affect the jury's findings toward both defendants in the suit by Mae Bebb. Both Yellow Cab Company and John DeVries were sued as joint tort-feasors in the Bebb case and either might be liable to Mae Bebb regardless of the counterclaim involved.

■ Defendant Yellow Cab Company next contends that it was denied a fair trial because the jury may have been influenced by certain comments, admonitions and rulings of the trial judge. Yellow Cab asserts "that the judge may have acted innocently, without intent to harm one party, or to help the other party, is not controlling because every litigant is entitled to an actual fair trial without regard to the subjective intent of the judge to give him one." The specific instances of which defendant complains occurred during the cross-examination of the cabdriver, Onzo Hoosmon. There was confusion over a question concerning the distance of the taxicab from the Chrysler when the cabdriver first saw the Chrysler. The judge attempted several times to clarify pending questions and at one point said with regard to a question pertaining to the cab's speed:

> "You see, we are having the same trouble with all of the witnesses. They do not pay attention to the question. They answer another question from the one that is asked. I am not criticizing this man particularly. They all do it. Now, you didn't pay attention to the question. Answer that question and nothing else. Now, as I see it, counsel didn't ask you what lane you were in at all. He asked you merely about your speed, so you answered another ques-

tion. Now, he wants to know in that travel, the distance between the time you first saw the DeVries car to the time you got to 71st Street, was your speed constant at ten to fifteen, or was it changed?"

Among the authorities cited are McDonald v. Fort Dearborn Nat. Bank, 72 Ill App 17 (1897); People v. Kelly, 347 Ill 221, 179 NE 898 (1931), and Dunn v. The People, 172 Ill 582, 50 NE 137 (1898). In substance, these cases affirm the rule that "it is beyond the province of a trial judge to express his opinion on the weight of the evidence or comment on the facts."

██ Plaintiffs argue that it was obvious that the witness was not answering the questions being put to him, and the trial judge intervened in order to move the trial along and clarify the testimony. They note that the law is well settled that the trial judge has the discretion to attempt to clarify any testimony that is confusing during the course of the trial. Cited as authority are Fisher v. Illinois Terminal R. Co., 350 Ill App 555, 113 NE2d 344 (1953); Hill v. Montgomery, 184 Ill 220, 56 NE 320 (1900); and Reed v. Sands, 11 Ill App2d 355, 137 NE2d 553 (1956). In Reed v. Sands, the trial judge said to a witness: "The court doesn't like to reprimand the witness for interjecting matters into the subject matter here, but I am warning you now not to make speeches to the jury or add anything to your answer here that are not called for by the question. The same may be stricken." There the court said (p 357):

"Plaintiff's contention that the Trial Court's remarks warrant a reversal cannot be sustained unless it appears that the same were of such a nature as would ordinarily create prejudice in the minds of the jury.

. . . . . .

"The record indicates clearly that the answers of the witness to which the Court referred not only exceed-

466

ed the scope of the questions propounded to him but also contained argumentative assertions unrelated to the subject of the examiner's inquiry. It is also apparent that if the witness was permitted to continue such practice, the same might well have resulted in prejudice to the defendant's rights. In admonishing the witness against interjecting extraneous matters into his answers, the Court appears to have properly refrained from expressing an opinion concerning the credibility of the witness or the weight to be accorded his competent testimony."

██ ██ We conclude after examining the record that the dialogue between the court, counsel and witness fails to disclose any conduct or comment that could be construed as prejudicial to the defendant Cab Company. The comments of the trial judge did not constitute an opinion on any of the evidence. Occasional questioning without expression of opinion on any controverted question of fact is within the discretion of the trial court, and "in absence of a manifest abuse of such procedure would not constitute reversible error." (Northern Illinois Gas Co. v. Wienrank, 66 Ill App2d 60, 76, 213 NE2d 411 (1965).) Here we think it was obvious that the trial judge was trying to clarify the testimony of the witness, and we find there was no prejudicial error in so doing.

██ Defendant Yellow Cab next contends that the jury was improperly instructed. It argues that plaintiff Bebb's instruction No. 5 (IPI instruction No. 60.01) should have been limited to DeVries or not given. It provided:

"There was in force in the State of Illinois, County of Cook, at the time of the occurrence in question, a certain statute which provided that:

"'No person shall drive any vehicle upon any public highway of this State at a speed which (1) is greater than reasonable and proper with

467

regard to traffic conditions and the use of the highway, or endangers the safety of any person or property; (2) is greater than the applicable maximum speed limit. The fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection or when special hazard exists with respect to other traffic or by reason of weather or highway conditions; and speed shall be decreased as may be necessary to avoid colliding with any person or vehicle on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.' "

Defendant Cab Company asserts that the instruction should have been limited to DeVries so that the jury would not consider the statute in relation to the Cab Company when, on the evidence, it was inapplicable to the Cab Company. On this point defendant Cab Company's authorities include Harris v. Minardi, 74 Ill App2d 262, 220 NE2d 39 (1966), where the court stated that the giving of a similar instruction constituted reversible error because there was no evidence that defendant was speeding and said (p 265):

"The only evidence of speed in the case was on the part of the plaintiff's driver. There is no evidence that the defendant was speeding. The speeding instruction tended to contradict the instruction on imputing negligence and the jury could have easily been confused by giving the foregoing instruction. Since the only evidence of speed was on the part of the plaintiff's driver the jury could have concluded that they were to use this evidence against the plaintiff as well as his driver. Under such misapprehension, the jury could have reached a compromise verdict."

Plaintiffs and defendant John DeVries argue that it is not fair to presume that the jury was misled. There was evidence of a fast turn by the cab, and the driver himself stated he "shot the gas." Furthermore, IPI instruction 41.03 was given to the jury, which provided:

> "Although there is more than one defendant in this action, it does not follow from that alone that if one is liable, both are liable. Each is entitled to a fair consideration of his own defense and is not to be prejudiced by the fact, if it should become a fact, that you find against the other. The instructions cover the case as to each defendant insofar as they are applicable to him, to the same extent as if he were the only defendant in the action and regardless of whether reference is made to the defendant or defendants in singular or plural form, you will decide each defendant's case separately as if each were a separate lawsuit."

We find no prejudicial error in the giving of plaintiff Bebb's instruction No. 5. The speed of both vehicles was an issue, and the record contains sufficient evidence on this issue so as to place the giving of this instruction within the sound discretion of the court. IPI instruction No. 41.03 negates any inference that the jury might have been misled. We conclude the jury was adequately instructed and find no error here.

██ The final contention of defendant Yellow Cab is that the verdicts exonerating defendant DeVries and finding against the Cab Company are contrary to the manifest weight of the evidence. It asserts that the sole cause of the collision was the negligence of John DeVries, and this is evidenced by the testimony of two independent eyewitnesses, uncontradicted, that DeVries was going 50 miles per hour before the collision, coupled with De Vries's admission that he was driving at 40 miles per hour or better, and reinforced by the 80 feet of skid

marks measured by the police officer and a bystander. It further asserts that the same conclusion is corroborated by the location of the impact in the curb lane by the independent eyewitnesses, the debris observed on the ground by the investigating officer, and the point of impact on the two vehicles.

Plaintiffs argue that it was for the jury to believe or disbelieve the testimony of the eyewitnesses and John DeVries, as well as Onzo Hoosmon. They assert that the jury obviously did not believe the complete testimony of the two independent eyewitnesses produced by the Yellow Cab Company and did believe the testimony of John DeVries by finding him not guilty of any negligence.

In sum, we find no prejudicial error that would warrant the granting of a new trial here. The record shows that the proper issues together with adequate instructions were submitted to the jury, and that all parties received a fair trial. Considering the testimony of De Vries and Hoosmon as to the position and speed of each car immediately prior to the impact, we find that this is not a case in which an opposite conclusion to that of the jury is clearly evident, as is required before this court can disturb the verdicts. Griggas v. Clauson, 6 Ill App2d 412, 419, 128 NE2d 363 (1955); Schneiderman v. Interstate Transit Lines, Inc., 331 Ill App 143, 72 NE2d 705 (1947).

For the reasons given, the judgments of the Circuit Court of Cook County are affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.