Marilyn Maddox, Plaintiff-Appellant, v. Leland Grisham, Defendant-Appellee.

Gen. No. 69–31.

Fifth District.

May 27, 1970.

Leonard J. Dunn, of West Frankfort, for appellant.

Bill F. Green, of Carbondale, for appellee.

MORAN, P. J.

This action was brought to recover damages for personal injuries arising out of an automobile collision based on the alleged negligence of the defendant and was tried before a jury in the Circuit Court of Perry County. The jury returned a verdict of $3,000 for the plaintiff, but also answered a special interrogatory submitted by defendant, that the plaintiff was guilty of contributory negligence. The trial judge then entered judgment for the defendant on this special finding. The plaintiff appeals.

On February 13, 1966, at about 4:45 p. m., the defendant was driving his automobile in an easterly direction on Route 13 at a point about five miles west of Pinckneyville, Illinois, when he attempted to pass a car being driven by the plaintiff. Just as the front end of his car got about even with the middle of plaintiff's car, the

defendant's wife, who was sitting in the front seat of defendant's car, told him that there was a car approaching from the opposite direction. Defendant then slowed down and attempted to turn back into his own lane of traffic. When he did this, the right front end of his car clipped the left rear end of plaintiff's car which then spun around and into the oncoming lane of traffic, where it was hit by a car coming from the opposite direction.

At the close of all the evidence, plaintiff made a motion for a directed verdict which was denied by the trial court. Also, over the strenuous objection of the plaintiff the trial court submitted a special interrogatory to the jury on the issue of plaintiff's contributory negligence. The jury rendered a verdict in favor of the plaintiff but answered the special interrogatory in the affirmative. The trial court then entered a judgment in favor of the defendant based upon the jury's answer to the special interrogatory.

Plaintiff contends that the trial court committed reversible error in failing to enter a verdict on all the issues in favor of the plaintiff at the end of all the evidence and in submitting the special interrogatory to the jury on the issue of plaintiff's contributory negligence.

PLAINTIFF'S EVIDENCE:

The defendant, Leland Grisham, testified under section 60 of the Civil Practice Act that on February 13, 1966, just prior to the accident, he was driving east along Route 13 when he came upon the plaintiff's Rambler and started to pass. So far as he knew, the road ahead was clear. When he got to the side of the Rambler, there was a grey car approaching "way on up the road" which he had not noticed. His wife said, "There is a car way up there." He testified, "I started slowing up . . . but apparently she slowed up, too, and I didn't get back as far as I thought I was and I just clipped her bumper." He did not recall whether he sounded his horn before passing

her. He was approximately halfway around her when he started to put on his brakes to pull back into the eastbound lane. Again he testified, "When I got back far enough that I thought that I was in the clear, I cut my car back and I clipped her bumper." He testified that after he hit her car, "it spun, turned around there in the road, headed back west . . . just flipped around there in the road." When he was passing her, he was going 40 to 45 miles per hour. He did not feel the impact when his car struck hers, nor did he see the impact between plaintiff's car and the westbound car which struck her, although he heard the westbound car burning rubber trying to stop. He was given a traffic ticket for improper passing by the investigating officer and he pleaded guilty to that charge.

Plaintiff, Marilyn Maddox, testified that on February 13, 1966, at about 4:45 p. m., she was driving her 1966 Rambler in an easterly direction on Route 13 which is a paved two-lane highway, at a point about five miles west of Pinckneyville, Illinois. The road was generally level but with a few small hills. It was a clear day. She was driving at approximately fifty miles per hour on her own side of the road. She then testified, "I was driving along and all of a sudden I heard these brakes squealing. I just glanced in the rearview mirror and there wasn't anyone behind me. I couldn't figure what in the world it was. A light car was coming down the road and then all of a sudden this car hit me in the rear. It spun my car around, facing the opposite direction in the westbound lane. This westbound car hit me."

On cross-examination she testified that there were a series of small hills just before the place of the accident. Just prior to the accident she had been traveling about fifty miles per hour and for the last one-half mile before the accident she did not see any cars following her. The first time she realized that defendant's car was

approaching was when she heard brakes squealing. At that time she glanced in her rearview mirror and saw a little bit of his car approximately halfway up to her car in the left-hand lane of traffic with the front near the middle of her car. At that time, the car approaching from the east was approximately eight car lengths away. She estimated its speed at approximately sixty miles per hour. She thought there was going to be a head-on collision. The defendant's car had not clipped her yet. She does not know if she pressed on the accelerator, but she is sure she did not press on the brake. She stated at her deposition that she pressed on the accelerator and thought she could clear a way. She did not see the defendant's car hit her car at any time. She assumed his front bumper clipped hers because she felt the defendant's car come into contact with hers. After defendant's car struck her, she spun around in the road. It moved her forward, to the right. She went off the road on the south side and back across two lanes of traffic to the north side of the road and spun around, facing west.

State Patrolman Carlos Tolbert testified that he investigated this accident on February 13, 1966. He determined that three cars were involved in this incident. Defendant told him at the scene that when he attempted to pass plaintiff's car, he noticed the oncoming car and upon returning to the eastbound lane of traffic, he "ran into the rear of the Maddox car. He pushed it or it went out of control into the other lane of traffic in front of the (oncoming car) who collided with the rear of the Maddox car at that time." He observed the defendant's car and noted that the right front fender was dented.

DEFENDANT'S EVIDENCE:

The defendant testified that prior to the accident he had been traveling 30 to 35 miles per hour and had been following in a line of cars. The car at the front of this line was the plaintiff's Rambler, traveling approximately

30 to 35 miles per hour in an easterly direction. He followed for approximately two or three miles before attempting to pass. When he got approximately halfway around the plaintiff he saw the approaching vehicle approximately six hundred steps away, and it appeared to be traveling fast, in his opinion. He started slowing down to get behind the Rambler. He thought the Rambler slowed as he slowed. He did not feel any jolt or hear any crash between her car and his own. He did get back on his own side of the road and safely stopped his car. As he returned to his own lane, "the Rambler just turned around, right square in the road and headed back west." He testified that at no time did he run into the rear of this Rambler. After the accident, he and the investigating state patrolman looked at the front fender of his car. There was a slight mark, but there was no dent right in the front on the right side, near the headlight. Until the Rambler went out of control, he thought he had actually gotten safely back into his own line of traffic and thought he had actually cleared.

On cross-examination he testified that "I said I might have clipped it with a bumper. I said I don't know, I said I could have. I don't say I did. I don't recall." At his deposition he had stated that he presumed that he had hit the bumper of the Rambler but that he could not see what part he hit at the time of the impact, nor could he see it after the collision because the other car had damaged the rear of the Rambler, but whatever part he hit, the Rambler just flipped around in the road and never left the road, and the impact of his car hitting hers just turned it around facing the other direction. He testified that he had also told the investigating state patrolman that he might have clipped the bumper.

The defendant's wife, Mrs. Hallie Grisham, testified that she was riding in the automobile with her husband at the time of the accident. They had come upon a string of cars traveling 40 to 45 miles per hour. Eventually

426

they came upon the plaintiff's Rambler traveling 30 to 35 miles per hour. They followed this Rambler for a period of time before the defendant attempted to pass. When he pulled out to pass, she estimated he was traveling about 45 miles per hour. When he was halfway around the Rambler, she saw the westbound automobile about 600 steps ahead of them, and she pointed this out to her husband. The westbound automobile appeared to be coming fast. He then slowed his automobile. She thinks that the Rambler automobile slowed, also. In getting behind the Rambler, she did not feel any jolt or hear any crash at any time. She saw the Rambler flip around in the road and end up headed west. Nothing happened to their automobile. To her knowledge, the defendant's car did not come into contact with the rear end of the Rambler. She had observed their car and to her knowledge there is no damage and their car has not been repaired.

DISCUSSION:

■ Verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504. This rule governs both the direction of verdicts and determination of the presence or absence of negligence or contributory negligence as a matter of law. Pedrick v. Peoria & Eastern R. Co., supra, at 503.

■ Clearly the evidence establishes that the sole cause of the accident was defendant's conduct and that he was guilty of negligence as a matter of law. His attempt to pass when the road ahead was not clearly visible and his turning back to his own lane when it was not safe to do so, causing his automobile to clip the rear ·of the plaintiff's automobile, precipitated the events leading to the collision. Although defendant points to the testimony of defendant and his wife that they did not feel

the jolt or hear any impact between their car and plaintiff's, the evidence is overwhelming that the defendant's car struck the plaintiff's car when he attempted to return to his own lane and caused it to go out of control.

Defendant contends, however, that notwithstanding the defendant's conduct, there are inferences to be drawn from the evidence from which the jury could conclude that the plaintiff was contributorily negligent. Defendant argues that there is evidence from which a jury could find (1) that if defendant's car did strike plaintiff's car, the impact was too slight to cause it to go out of control, (2) that if defendant's car struck plaintiff's car, it was due to the fact that she slowed down as defendant was trying to return to the right lane of traffic, (3) the plaintiff attempted to accelerate and lost control of her vehicle, and (4) that plaintiff merely failed to maintain control of her automobile.

We do not believe that any of the foregoing contentions are tenable. It is difficult to believe that the impact between defendant's and plaintiff's cars was too slight to cause plaintiff's car to go out of control, when the uncontroverted evidence is that immediately upon contact between the two cars, plaintiff's car spun around in the highway and was struck in the rear by a car coming from the opposite direction. Assuming plaintiff did accelerate or slow down during the emergency created by the defendant, this would still be no evidence of negligence on her part. Either action may have seemed to her the safest thing to do at the time.

The record does not reflect anything that the plaintiff, acting as a prudent person, did do or could have done to avoid the accident in question. Thus, it was error for the trial court to submit the issue of plaintiff's contributory negligence to the jury.

We think it can fairly be said that all of the evidence viewed most favorably to defendant so overwhelmingly favors plaintiff that no contrary verdict based on

428

this evidence could ever stand. Plaintiff's motion for directed verdict at the close of all the evidence on the issue of defendant's liability should have been allowed and only the issue of damages should have been submitted to the jury.

█ Plaintiff also contends that the jury verdict of $3,000 is so grossly inadequate that she is entitled to a new trial on the issue of damages. She points out that the plaintiff suffered special damages in excess of $4,400, and that the jury award does not even equal that amount. Under the facts in this case, the only issue that should have been submitted to the jury was the damages, and the erroneous submission of the liability issue could have been reflected in the damage award of the jury.

The judgment of the Circuit Court of Perry County is reversed and remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

EBERSPACHER and GOLDENHERSH, JJ., concur.