ALLEN MOORE, Plaintiff-Appellee, *v.* CHECKER TAXI COMPANY, INC., Defendant-Appellant—(SANFORD NAPIER *et al.*, Defendants.)

(No. 54981;

First District—July 15, 1971.

Fitzpatrick & Gulbranson, and Jesmer & Harris, both of Chicago, (Peter Fitzpatrick, of counsel,) for appellant.

590

Joseph R. Schwaba, of Chicago, for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

In this personal injury case, the plaintiff Allen Moore sued for damages allegedly caused by two vehicles, one, an automobile driven by the defendant Sanford Napier, and the other, a Checker cab driven by James Cunningham. The jury returned a verdict against both defendants and answered a special interrogatory finding that Moore was not guilty of any negligence which proximately contributed to the cause of his injuries. The Checker Taxi Company appeals from the judgment entered on the verdict asserting that: Moore was guilty of contributory negligence as a matter of law, his attorney made an improper argument to the jury, and the verdict was against the manifest weight of the evidence.

The accident occurred on a Sunday evening near the intersection of 15th Street and South Pulaski Road, Chicago. There were traffic lights at the intersections of 14th Street and Pulaski, and 16th Street and Pulaski, which controlled the traffic on Pulaski, a four-lane street running north and south. Although there were no traffic signals at 15th Street and Pulaski, this intersection was illuminated by street lights.

Moore testified that he left an American Legion Post about 9:30 P.M., after spending several hours there. As he was being driven to his home at 1437 South Springfield Avenue, he noticed a friend, Edgar Craig, standing outside of the Zodiac Lounge at 1452 South Pulaski. He wanted to talk to Craig and he asked the driver to let him out of the car. After speaking briefly with Craig in the vestibule of the lounge, they walked out together. Craig turned south on Pulaski and Moore walked directly east to the curb. Though not at a crosswalk, he wished to cross Pulaski to continue his way home. He looked to the north and then to the south and saw that the traffic both at 14th Street and at 16th Street was stopped by the traffic lights. He began walking east across Pulaski but stopped in the middle of the street as cars were then proceeding north in the 1500 block of Pulaski. At least four other persons who were crossing the street just to the south of him also stopped. Moore stood upon the center line, which was white and about twelve inches wide, with a four-inch wide yellow line on either side. After waiting several seconds he noticed an auto coming from the north. The auto [driven by Napier] was traveling close to the center line and as it passed him it brushed his coat and spun him halfway around so that he was facing west. Immediately thereafter, another auto [the Checker cab] came from the south around another car, straddled the center line, struck him on his left side and knocked him down. The left front wheel of the taxi rolled over him and he was wedged, with his head to the west and his feet to the east, be-

tween the cab's wheel and fender. During the moment or two before he lost consciousness he noticed that the front of the cab was three feet west of the center line of the street.

Checker contends that Moore was guilty of contributory negligence as a matter of law because he knowingly placed himself in a dangerous position in the street and then failed to exercise due care for his own safety. It argues that there was no marked safety zone where he stopped and that he exposed himself to danger by standing where he did; that Napier's auto did not cross the center line, yet it struck and tore his coat and caused him to spin around; that he could not yield the right-of-way to the auto because, as he testified, if he had stepped forward he would have placed himself in the path of the cab; that he was in the center of the street fifteen seconds before he saw Napier's auto coming toward him and that this unreasonable delay in looking to the north left him no time to avoid either the auto or the cab.

■■ What evidence constitutes contributory negligence is ordinarily a question of fact and each case must be determined on its own facts and circumstances. (*Murad v. Witek* (1964), 48 Ill.App.2d 137, 199 N.E.2d 809.) Since Checker seeks judgment as a matter of law, it must show that all the evidence bearing upon Moore's negligence, when viewed most favorably toward him, so overwhelmingly established his negligence that no verdict in his favor could ever stand. *Maddox v. Grisham* (1970), 124 Ill.App.2d 421, 260 N.E.2d 336; *Bebb v. Yellow Cab Co.* (1970), 120 Ill.App.2d 454, 257 N.E.2d 164.

■■ Whether Moore was negligent in attempting to cross Pulaski under the prevailing traffic conditions, or in stopping in the middle of the street, or in his conduct while standing there, presented factual, not legal, questions. There is no statutory prohibition against crossing the street where he did. Paragraph 172(a) of chapter 95½, Ill. Rev. Stat. 1961, states that a pedestrian crossing a street outside a marked crosswalk "shall yield the right-of-way to all vehicles upon the roadway." Subparagraph (c) of paragraph 172 provides that notwithstanding the provision of 172(a) "every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway * * *." It cannot be held, therefore, that because Moore did not walk in a marked crosswalk he was contributorily negligent as a matter of law. Nor was his stopping in the middle of the street legally negligent. Indeed, the only way pedestrians can get across many Chicago streets—including intersections without safety signals—is to proceed in two stages. They must first look to the left to see if traffic will permit them to reach the middle of the street; if it does, they must hurry there and then look to the right for an opening in the traffic which will enable them to complete

the crossing. Whether Moore failed to exercise reasonable care for his own safety while he was standing on the center line was also a jury question. A pedestrian's failure to keep a constant lookout after he has reasonably and cautiously entered a street is not contributory negligence as a matter of law. (*Klettke v. Checker Taxi Co., Inc.* (1960), 26 Ill.App.2d 341, 168 N.E.2d 453.) Moore testified that he did not start across Pulaski until he looked both north and south and· made sure the traffic was stopped at 14th and 16th Streets. By the time he reached the center it was unsafe to go farther because cars were coming from the south. He cannot be held at fault for looking to the south at this point and not to the north. He was standing on the white line, out of the lanes of traffic, and a fifteen second delay in turning to the north was not unreasonable. When he saw Napier's auto it was only twelve feet from him. If it had stayed a safe distance from the center line he would not have been in peril; but Napier's carelessness endangered him and the other pedestrians who were standing in the crosswalk a few feet to his right. All of them were scattered, and at least one of them was struck, by Napier's car.

■■ The trial judge was correct in submitting to the jury the issue whether Moore acted reasonably for his own safety. Whenever the evidence permits the drawing of different inferences or requires the weighing of conflicting testimony, a jury question arises. (*Snyder v. Black, Inc.* (1964), 53 Ill.App.2d 327, 203 N.E.2d 1.) The jury's conclusion, as expressed in its general verdict and as stated in its answer to the special interrogatory, that Moore was not guilty of negligence which proximately contributed to the cause of his injuries, was not contrary to the evidence.

■■ Checker's second contention of error concerns a comment made by Moore's attorney in reference to the special interrogatory. In his closing argument he stated to the jury:

> "* * * one of the inquiries that will be given you by His Honor, Judge Paschen, is a special interrogatory which says, 'Do you find that the Plaintiff, Allen Moore, was guilty of any negligence which proximately contributed to the cause of the injury complained of?' If you believe that he was not guilty of negligence that caused this accident, you should answer 'No' to that inquiry, because if Allen Moore was guilty of negligence, then he can't recover and they are right."

It is reversible error for the jury to be told that the answer to the special interrogatory must be in conformity with the general verdict. (*Sommese v. Maling Bros., Inc.* (1966), 36 Ill.2d 263, 222 N.E.2d 468.) However, Moore's attorney did not, as the defendant contends, violate this proscription. He did not tell the jury that if damages were to be awarded

to Moore, the interrogatory must be answered in the negative so that the verdict and the answer to the interrogatory would conform with each other. As long as the attorney refrains from stating that the answer to the interrogatory should agree with the general verdict, he has the right to suggest how it should be answered. (*De Franze v. Valenzia* (1969), 118 Ill.App.2d 306, 254 N.E.2d 822; *Ehret v. Loyal Protective Life Insurance Co.* (1969), 112 Ill.App.2d 289, 251 N.E.2d 101.) Moore's attorney did no more than this.

Checker also urges that the verdict was against the manifest weight of the evidence. At the trial, Checker presented a description of the accident which diverged markedly from Moore's. Moore's witnesses said that the accident happened shortly after 9:30 in the evening, those for defendant Checker stated that it occurred after 10:30 P.M. Moore testified that drops of rain were starting to fall as he left the lounge; defense witnesses stated that the rain had commenced earlier in the evening.

A defense witness asserted that he had met Moore at 18th and Pulaski, during the period of time when Moore testified he was visiting an American Legion Post. He also stated that he drove Moore from 18th and Pulaski to 15th and Pulaski, around 8:00 or 8:30 P.M., and that they drank together at the Zodiac Lounge for about two hours. However, the commander of the American Legion Post testified that Moore was at the post until after 9:00 P.M., and that he personally drove him to 15th and Pulaski.

Concerning the accident itself, the taxi driver testified that he was driving north in the 1500 block of Pulaski when he observed Moore and other pedestrians walking east across Pulaski. As he reached the 15th Street intersection, he observed the car driven by Napier traveling south at a greater speed than the rest of the traffic. Napier's car hit Moore who was then standing on the center line and threw his body into the path of the cab. His body hit the left side of the cab and came to rest behind the left front wheel. The driver denied that the cab's front wheel rolled over him. His account of Moore's body flying through the air and hitting the cab was supported by a passenger in the cab and by another witness.

Craig, the man Moore met at the doorway of the lounge, and a bartender who was just leaving the lounge, corroborated Moore's testimony. Although their descriptions of the accident differed from his in certain details, they confirmed the fact that he was struck by the cab while he was standing on the center line. Craig also stated that the taxi driver admitted striking Moore because he did not see him until he was too close to him. The cabdriver denied making this statement.

Napier testified that when he saw the taxicab after the accident it was

partially over the center line of Pulaski. He also stated that he was not positive whether or not his car had struck another pedestrian, although it might have done so.

Jurors are the sole judges of the credibility of witnesses and the weight to be accorded their testimony. (*Horst v. Morand Brothers Beverage Co.* (1968), 96 Ill.App.2d 68, 237 N.E.2d 732.) The jury heard the description of the accident from the witnesses for the plaintiff and those for the defendants. It determined that both Napier and Checker were responsible for Moore's injuries. These findings were not against the manifest weight of the evidence and they were not, as Checker argues, in conflict with each other.

The judgment is affirmed.

Judgment affirmed.

McNAMARA, P. J., and McGLOON, J., concur.