2 Ill. App.3d 151 (1971)
276 N.E.2d 65
LUCILLE WINSTON, Plaintiff-Appellee,
v.
CHICAGO TRANSIT AUTHORITY, Defendant-Appellant.
No. 55354.
Illinois Appellate Court  First District.
October 21, 1971.
*152 *153 George J. Schaller, O.R. Hamlink, and Paul Denvir, of Chicago, for appellants.
Washington, Kennon, Bryant & Hunter, of Chicago, for appellee.
Judgment affirmed.
Mr. JUSTICE DEMPSEY delivered the opinion of the court:
Lucille Winston, a pedestrian, was injured on an early November morning when she was struck by a Chicago Transit Authority bus at 37th Place and Cottage Grove Avenue, Chicago. A jury returned a verdict against the C.T.A. and the driver of the bus. The C.T.A.'s contentions on appeal are that the court erred in instructing the jury and in denying its motion for judgment notwithstanding the verdict.
Mrs. Winston lived on 37th Place, a street which ends at Cottage Grove. She left her home at 6:15 A.M. to go to work. It was dark and raining and she wore a scarf around her head and carried an open umbrella. She walked on the north side of 37th Place to Cottage Grove, a four-lane street running north and south, where she hailed a northbound taxicab. The cab stopped on the east side of Cottage Grove and she stepped off the west curb to cross the street. A C.T.A. bus coming from the north attempted to stop and skidded on the wet pavement; its rear end swung to the west and struck her.
The driver of the bus testified that he was driving in the center lane at about 20 to 25 miles an hour. He saw Mrs. Winston leave the curb and run out into the street. Her head was down and covered. She kept running toward the center of the street and when she was about four feet from the center line and 20 or 30 feet from the bus he sounded his horn, applied his brakes and swung the bus all the way to the left and into the northbound lane. The bus skidded 20 or 30 feet, "fishtailed" to the right and came to a stop south of 37th Place where it struck a truck parked on the east side of Cottage Grove. He got out of the bus and saw Mrs. Winston lying near the center line of the street, back of the rear door and a foot and a half from the right side of the bus.
Mrs. Winston testified that after stepping off the west curb she looked both ways and saw a bus to her left near 36th Street. She took a step or two farther and suddenly became aware that the bus was approaching in the lane in which she was standing. She stepped or jumped toward the curb but did not know what happened after that. She blacked out. She regained consciousness before being taken away in an ambulance and requested someone to ask her neighbors to take care of her children.
*154 A letter carrier, the only bus passenger who testified at the trial, contradicted the driver. He said the bus was traveling 40 miles an hour before it struck Mrs. Winston. He saw her leave the curb and felt the bus swerving around just after she stepped off. After accepting a witness card from the driver, he left the bus. Its rear end was then in the middle of the street and Mrs. Winston was lying near the back wheel.
The only other eyewitness testified for the defense. However, he corroborated Mrs. Winston in respect to her location and the location of the location of the bus. He was standing close to the intersection and saw her as she came to Cottage Grove. He heard the screeching of brakes as she took her first step from the curb. She was two or three steps from the curb when the bus, which was on the right side of the street, slid to the west; its back end swerved and collided with her. He contradicted Mrs. Winston in respect to her umbrella, stopping after entering the street and stepping back to the curb. He said she was holding the umbrella down over her face and that she did not stop walking from the time she was on the sidewalk until she was hit.
The C.T.A. first contends that its motion for judgment notwithstanding the verdict should have been allowed because the evidence, when viewed in its aspect most favorable to Mrs. Winston, so overwhelmingly favored the C.T.A. that the verdict for her could not stand. It argues that her description of the accident must be rejected because the location of the bus before and after the collision, as well as her position on the street after the collision, make her version of the occurrence unsupportable.
The driver testified that the bus was traveling in the lane next to the center line but the testimony of the other witnesses was not so clear on this point. Mrs. Winston said the bus was coming toward her in the lane in which she was standing and she was only a step or two away from the west curb. The defendant's own witness said it was on the right-hand side of the street. The location of the bus after the accident, on the other hand, was definitely established. It was facing east or southeast and most of it was across the northbound lanes of Cottage Grove. Mrs. Winston's position after the accident was likewise established. The witnesses who testified on this point placed her close to the rear wheel of the bus.
Mrs. Winston's position and the location of the bus after the accident do not conclusively prove that the driver's story of the occurrence was accurate and Mrs. Winston's inaccurate. Although she was the only person who testified that she returned to the curb to avoid being struck, the two disinterested witnesses placed her very close to the curb. They both testified that she had just stepped from the curb when the rear of the *155 bus swept into her. The driver himself said it fishtailed. By "fishtailing" he meant that it sort of "flopped around," that the rear of the bus swung out "farther than the front." The jury could have found that the force of the whip-action by a speeding vehicle operating on a slippery surface could have propelled her into the street.
 1 The jury was fully apprised of the physical facts surrounding the accident and it was also aware that certain details of Mrs. Winston's testimony differed from what she stated at a pre-trial deposition. Since the evidence was conflicting and substantial questions of fact were in dispute, and since different inferences could be drawn from those facts, the determination of the truth depended upon the jury's evaluation of the credibility of the witnesses. (Horst v. Morand Bros. (1968), 96 Ill. App.2d 68, 237 N.E.2d 732.) This court cannot set aside the jury's verdict when, as here, evidence favorable to the plaintiff and reasonable inferences from that evidence support the verdict.
Incidental to its first contention, the C.T.A. argues simultaneously that Mrs. Winston was guilty of contributory negligence as a matter of law because  her vision being obscured by her umbrella  she either walked into the bus or ran to the middle of the street and into the path of the bus. This argument, of course, is based on the testimony favorable to the defendant; it ignores all testimony favorable to the plaintiff.
 2, 3 For the trial court to find contributory negligence as a matter of law, it must be shown that all the evidence bearing upon the plaintiff's negligence, when viewed most favorably toward her, so overwhelmingly establishes her negligence that no verdict in her favor could ever stand. (Moore v. Checker Taxi Co. (1971), (Ill. App.2d), No. 54981, filed 7/15/71; Maddox v. Grisham (1970), 124 Ill. App.2d 421, 260 N.E.2d 336.) What evidence constitutes contributory negligence must be determined from the facts and circumstances of each case. (Murad v. Witek (1964), 48 Ill. App.2d 137, 199 N.E.2d 809.) Whether Mrs. Winston was guilty of negligence in failing to observe the bus before she entered Cottage Grove, or whether she failed to take sufficient precaution for her own safety once in the street, presented questions of fact and not of law. The jurors were instructed as to the law of contributory negligence, they observed the witnesses, heard their testimony and saw several pictures of the intersection. There is no reason to upset the determination implicit in their verdict that Mrs. Winston was not contributorily negligent.
The C.T.A.'s final assertion of error is that one of its tendered instructions was refused. The instruction, which the court declined to give, stated:

*156 "There was in force in the City of Chicago at the time of the occurrence in question a certain ordinance which provided that:
`27-284 Pedestrian crossing.
`(a) No pedestrian shall cross a roadway at any place other than by a route at right angles to the curb or by the shortest route to the opposite curb except in a marked crosswalk.
`b) No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield.'
"If you decide that a party violated the ordinance on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was contributorily negligent before and at the time of the occurrence."
 4-6 A party to a lawsuit has the right to have the jury instructed upon its theory of the case when that theory is supported by the pleadings and evidence. (Vincent v. Wesolowski (1967), 87 Ill. App.2d 477, 232 N.E.2d 120.) The object of instructions is to clearly inform the jury of the issues presented, the principles of law to be applied and the necessary facts to be proved to justify a verdict. (Warnes v. Champaign County Seed Co. (1955), 5 Ill. App.2d 151, 124 N.E.2d 695.) Where no prejudice is shown the refusal to give an instruction cannot be deemed reversible error. McManus v. Feist (1965), 76 Ill. App.2d 99, 221 N.E.2d 418; Kortlander v. Chicago Transit Authority (1965), 56 Ill. App.2d 48, 205 N.E.2d 516.
Subparagraph (a) of the instruction had no application to the evidence. There was no testimony that Mrs. Winston crossed Cottage Grove at a diagonal and the defense does not contend there was. All testimony indicated that she started across the street at a right angle to the curb. This was also the impression of the trial judge who so stated when he refused the instruction. [Inexplicably, however, the driver stated under cross-examination that after reaching the middle of the street she moved north toward his bus. The C.T.A. has made no point of this and the attorneys on appeal, who were also the trial counsel, offered no explanation for this part of his testimony.]
Subsection (b) of the tendered instruction touched on one phase of the defendant's theory: running into the path of the vehicle. But it was not the C.T.A.'s contention and not the testimony of the driver that she suddenly left the curb. The driver said he saw her standing on the curb and saw her enter the street. At this point he was alerted but not alarmed; he neither blew his horn nor slowed down. He said he watched her as she moved into the street and when he saw that she was not *157 going to stop, he braked his bus, sounded his horn and swung to his left. Her action was not the unexpected bolting into the path of an oncoming vehicle contemplated by the ordinance.
 7-9 In view of the inapplicability of sub-section (a) the instruction as submitted was defective. The plaintiff, however, did not object to the instruction on this ground. Sub-section (b) while not entirely consonant with the defendant's theory was partially so, and it could well have been given. Neverthless, the failure to do so was not prejudicial.
The jury was instructed that it was necessary for the plaintiff to exercise due care for her own safety. The jury was also instructed pursuant to the defendant's request that there was a City ordinance which provided:
"Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway."
Whether or not the crosswalk was marked at the intersection of 37th Place and Cottage Grove was not clear from the testimony or exhibits. This instruction informed the jurors that if Mrs. Winston was not walking in a marked crosswalk she was obligated to yield the right of way to the bus and if she failed to do so that fact could be considered by them in determining whether she was contributorily negligent. Thus, even if the jury considered that part of the driver's testimony about her turning north, she would have been outside the crosswalk  marked or unmarked  and the jury was instructed that under this circumstance her failure to yield the right of way would be a violation of the ordinance.
 10 The jury was thus sufficiently apprised of the defendant's theory that they would not be liable for the plaintiff's injuries if, by failing to yield the right of way, she put the bus driver in such a position that he could not avoid striking her. Instructions are to be considered as a whole and the failure of the trial court to inform the jury of the ordinance set forth in the defendant's refused instruction would not warrant reversal. Cole v. Chicago E.R.R. Co. (1961), 33 Ill. App.2d 10, 178 N.E.2d 401.
The judgment is affirmed.
Judgment affirmed.
McNamara, P.J., and McGLOON, J., concur.