TERRENCE BRESLIN, a Minor, by FRANK BRESLIN, His Father and Next Friend, Plaintiff-Appellee, *v.* SANDRA BATES *et al.*, Defendants-Appellants.

(No. 55378;

First District (3rd Division)—October 4, 1973.

Morgan, Halligan, Lanoff & Cook, of Chicago, (John M. Breen, Jr., of counsel,) for appellant Sandra Bates.

Schaffenegger & Watson, of Chicago, for plaintiff-appellee Terrence Breslin.

Lane, Falasz & Pollman, of Chicago, for plaintiff-appellee and cross-appellant Robert Betley.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

On the evening of April 15, 1964, at the intersection of Nina and West Circle Avenues in Chicago, a collision occurred between two automobiles driven by Terrence Breslin and Sandra Bates. Robert Betley was a passenger in the Bates' vehicle. Three legal actions were instituted as a result of the accident.

Breslin filed a complaint seeking damages against Bates which charged her with the negligent operation of her automobile in that she: drove at an excessive speed, failed to keep a proper lookout for other traffic, did not sound a warning of her approach, failed to yield the right-of-way and did not keep her automobile under sufficient control. Bates denied she was guilty of negligence and filed a complaint alleging similar acts of negligence against Breslin. Breslin answered and likewise denied he was guilty of any negligence. The third complaint, that of Robert Betley, was in two counts: it charged Bates and Breslin with operating their automobiles in such a manner that a collision occurred resulting in his being injured. Identical acts of commission were alleged against them, although Breslin's behavior was termed negligent and Bates' willful and wanton. Specifically, it was asserted that they violated speed laws, disregarded traffic signals, did not stop when danger was imminent, and failed to warn Betley, to yield the right-of-way and to equip their vehicles with adequate brakes. Breslin and Bates denied liability and the three actions were consolidated for trial.

Following a jury trial verdicts were returned for Breslin and against Bates with damages assessed at $1,500; for Betley and against Bates with damages assessed at $10,000; for Breslin in Bates' action, and for Breslin in Betley's action against him. Motions for judgment notwithstanding the verdict and for a new trial were denied. Bates appeals from the judgments against her in favor of Breslin and Betley, and Betley appeals from the judgment finding Breslin not liable as to him.

West Circle Avenue follows a curving path, but generally runs from southeast to northwest. Nina Avenue is a straight thoroughfare from southwest to northeast. The two streets intersect at right angles and there were no traffic control devices at the intersection. The accident occurred at about 8:30 P.M.; the night was dark but clear, and street lights provided illumination.

Breslin, a minor, was driving northeast on Nina with his headlights on. He stated that he was traveling 15 to 18 miles per hour at the time of the accident. He intended to cross West Circle Avenue, and as he approached it he looked both to his left and to his right; he observed no on-coming vehicles and proceeded into the intersection. He had taken his foot off the gas pedal, was looking straight ahead and had gone three-fourths of the way across Circle when there was a swerve, a flash, and he collided with another vehicle coming from the right.

That automobile, which Breslin did not see until a second prior to the collision, was driven by Sandra Bates, also a minor. She, accompanied by five passengers, including Robert Betley, was driving northwest on Circle Avenue with the intention of crossing Nina Avenue. Her head-

lights were turned on, and she stated at the trial that she was traveling at a speed of 25 miles an hour. However, testimony was introduced tending to show that her speed was excessive. As she neared the intersection she observed two headlights to her left from a vehicle which appeared to be farther away from the intersection than hers. She stepped on the gas and went straight ahead. The next thing she knew her car was struck; it came to a stop on the parkway on the south side of Circle, approximately 130 feet west of Nina. The impact spun Breslin's automobile around so that it came to rest facing south, having crossed the intersection.

■■ Although the lawsuits resulting from the accident were tried together, the burdens of proof borne by the parties were not identical. The complaints filed by Breslin and Bates against each other and Betley's complaint against Breslin were based upon allegations of negligence, not willful and wanton misconduct. Betley, who was a passenger in Bates' auto asserted she was guilty of willful and wanton misconduct. By returning a verdict in his favor the jury showed that it agreed with his characterization of her behavior. On appeal the question has arisen whether the jury's finding in the action between Betley and Bates affects Breslin's burden of proof as to his own freedom from negligence. Negligence and willful and wanton misconduct are not synonymous; indeed, negligence and willfulness have been declared to be as unmixable as oil and water. (*Bartolucci v. Falleti* (1943), 382 Ill. 168, 46 N.E.2d 980.) We see no justification for holding that the finding of the jury in the Betley v. Bates suit has any bearing upon the standard of proof Breslin had to make in order to sustain the jury's determination in his favor in the actions between Bates and himself.

Bates initially seeks reversal of the Breslin judgment. She contends that he should be precluded from recovery because he was guilty of contributory negligence in failing to yield the right-of-way, in not keeping a proper lookout and in not decreasing his speed to avoid colliding with her automobile. Since she seeks such a determination as a matter of law she must show that all the evidence bearing upon Breslin's negligence, when viewed most favorably toward her, so overwhelmingly established his negligence that no verdict in his favor could ever stand. *Moore v. Checker Taxi Company, Inc.* (1971), 133 Ill.App.2d 588, 273 N.E.2d 514.

Breslin testified that when he was fifty feet from the intersection of Nina and Circle he looked to his right, down Circle. Leon Kersey, an investigating police officer, stated that at this intersection the houses were set back fifty feet from the street. This set-back enhanced Breslin's ability to observe oncoming vehicles. Although Circle was curved, he

could see about the distance of six houses before his vision was obstructed and he saw no vehicle approaching. His speed was between 15 and 18 miles an hour and he took his foot off the gas pedal when he entered the intersection. Whether Breslin was telling the truth and whether he was justified in believing he could safely proceed through the intersection were questions for the jury to determine. (*Payne v. Kingsley* (1965), 59 Ill.App.2d 245, 207 N.E.2d 177.) At the trial two of the passengers in the Bates automobile testified to the fast speed at which she was driving. Kersey testified that she admitted at the scene of the accident that she exceeded the speed limit while going west on Circle. The jury might have concluded that if she had been driving at a proper speed, Breslin would have had time to cross the intersection before she reached it, or would have had a greater opportunity to see her automobile and yield the right-of-way, or could have reacted in a manner to avoid colliding with her. On the other hand, the jury had before it Robert Betley's estimate that Breslin's speed was over 50 miles an hour, and it also had heard statements by occupants of the Bates auto that when it approached the intersection the headlights of Breslin's car were to the left and farther away from the intersection than the Bates auto.

■■ The jury apparently accepted Breslin's testimony regarding the speed at which he drove his automobile and the effort he made to keep a proper lookout, and determined that he exercised due care for his safety and that of others. What evidence constitutes contributory negligence is ordinarily a question of fact, and each case must be determined according to its own facts and circumstances. (*Murad v. Witek* (1964), 48 Ill.App.2d 137, 199 N.E.2d 809.) Whether he was contributorily negligent was a question properly submitted to the jury and, as we cannot say a conclusion opposite to its determination is clearly evident, the jury's verdict will not be disturbed on that ground.

Our conclusion that sufficient evidence was presented to make the issue of Breslin's negligence a proper question for the jury bears upon two more contentions of the parties in this appeal. First, Betley asserts that Breslin was negligent as to him in failing to yield the right-of-way, not keeping a proper lookout, and not decreasing his speed to avoid a collision. However, his arguments are similar to those raised by Bates and our previous discussion and conclusion are controlling. Therefore, Betley's contention must be rejected. Second, Bates asserts that she is entitled to judgment against Breslin notwithstanding the verdict. Our rejection of this contention need not be based solely upon our previous conclusion. There was sufficient evidence presented to support a finding that Bates herself was negligent.

■■ Three witnesses testified that she drove at an excessive speed; she asserts, however, that their testimony on that subject was incompetent and incredible. As previously noted, officer Kersey stated that Bates admitted to him after the accident that she had exceeded the speed limit on West Circle. Bates objects to this statement since Kersey did not testify at what point on West Circle she had been going over the speed limit, or what the speed limit was. It was established during the trial that she had been driving on Circle for four blocks before reaching Nina. The jury was thus informed that her alleged speed was within a short distance of Nina; the fact that the distance was not specified and that Kersey did not give the speed limit did not destroy the competence of his testimony. Her statement revealed an awareness that she had engaged in conduct she considered unlawful, which may well have had a direct bearing upon the responsibility for the accident. It constituted an admission against her interest, as inconsistent with her defense and was properly admissible against her. (*Casey v. Burns* (1955), 7 Ill.App. 2d 316, 129 N.E.2d 440.) Her testimony that she never made the statement to Kersey was also properly placed before the jury for its consideration.

Two passengers in Bates' auto testified about conversations they had with her concerning her speed. Joan Malee stated that prior to the collision she asked Bates to drive slower and told her she was frightened. Bates said not to worry, that she could handle it. Later, when Bates and Malee discussed the accident in the hospital, Malee mentioned that she felt Bates was driving faster than she should have been and Bates answered: "Well, it's too late now, there is nothing that can be done. The accident has already happened." Barbara Bork, another passenger, also thought Bates was driving too fast and asked her to slow down but Bates did not do so. Bork estimated Bates' speed at forty miles per hour or more; she stated that she would guess the car was going at that rate four or five car lengths from Nina, but that she really had no judgment as to speed. Bates denied the conversations and argues that the testimony as to her speed was incompetent. One not an expert may testify to the speed of a vehicle and state his opinion based upon observation of it while it is in motion. (*Johnson v. Coey* (1908), 142 Ill. App. 147.) For example, it has been held error to strike testimony that a train was going "very fast," for a witness might know that it was moving fast or slow and yet be unable to state its speed in miles per hour; this inability does not render the testimony of no value or incompetent upon the question of speed (*Overtoom v. Chicago & E. I. R. Co.* (1899), 181 Ill.323, 54 N.E. 898), and its admission is not an abuse

of the court's discretion. *Cf. Wright v. Callaghan* (1964), 50 Ill.App.2d 157, 200 N.E.2d 56.

■■ It was not error to admit the conversations despite Bates' objections that they were hearsay. The essential feature without which testimonial offerings must be rejected is the opportunity for cross-examination of the party whose assertions are offered to prove the truth of the matter asserted. (*People v. Carpenter* (1963), 28 Ill.2d 116, 190 N.E.2d 738.) Malee, Bork and Bates were present in court to recount the circumstances and the nature of the conversations. Bates' failure to deny her excessive speed when confronted by Malee's accusation in the hospital also constituted an admission which could be implied from her silence and was properly placed before the jury. (*Casey v. Burns.*) The jury was apprised of the fact that only Malee and Bork, among the occupants of Bates' car who testified, remembered any discussion with her regarding her speed and that Malee herself did not recount it when questioned at her pretrial deposition. It was the province of the jury to determine the truth of the testimony depending upon its evaluation of the credibility of the witnesses. *Winston v. Chicago Transit Authority* (1971), 2 Ill.App.3d 151, 276 N.E.2d 65.

Bates next contends that she was prejudiced by the cross-examination of James Masonick, a passenger in her car. Masonick testified that Bates' headlights were on while she was driving. He was asked by Breslin's counsel: "Now, sir, you know what playing chicken is going through an intersection?" Masonick answered, "Yes." Following a brief interchange, counsel then explained, "In other words, when you are approaching an intersection, you put out your lights and try to shoot across the intersection." After an objection, Masonick stated, "It can mean anything to anyone." He then reaffirmed his testimony that Bates' headlights were on. The questioning and statement of counsel concerning "playing chicken" were improper; there was neither an allegation nor evidence to support the implication that Bates had turned her headlights off and raced through the intersection. However, we do not feel she was seriously prejudiced. Other witnesses said her headlights were on and Masonick was unwavering in his declaration that they were. The objectionable remarks of counsel were not repeated when he questioned other witnesses.

■■ Bates points out that she had the right-of-way and that she was entitled to assume that Breslin would respect it. According to Ill. Rev. Stat., 1963, ch. 95½, par. 165(b), "when two vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the ve-

hicle on the right." This statute must be considered with regard to the speed and distance of the vehicles approaching or entering the intersecting street. (*Klein v. Pritikin* (1972), 6 Ill.App.3d 323, 285 N.E.2d 457.) On these issues there was a conflict in evidence. Occupants of Bates' car stated that when it entered the intersection Breslin's automobile was farther away from it than they were. Breslin, on the other hand, stated that he looked in the direction from which Bates' car came but did not see it until he was more than half-way across the intersection. Even if the jury concluded that Bates had the right-of-way, its possession does not relieve the motorist from the duty of exercising reasonable care to avoid injury. (*Izzo v. Zera* (1965), 57 Ill.App.2d 233, 205 N.E.2d 644.) The jury could properly have determined that Bates negligently violated this responsibility by her excessive speed. Her motion for judgment notwithstanding the verdict was properly denied.

Bates next urges that she was not shown to have been guilty of willful and wanton misconduct as to Robert Betley and, therefore, the trial court should have granted her motion for a directed verdict. Whether an act is willful and wanton depends upon the circumstances of each case and usually the issue is left to the jury's determination. (*Richichi v. City of Chicago* (1964), 49 Ill.App.2d 320, 199 N.E.2d 652.) However, this statement is subject to the qualification that verdicts ought to be directed in those cases where all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria and Eastern R.R. Co.*, (1967), 37 Ill.2d 494, 229 N.E.2d 504.) When all of the evidence is viewed in its aspect most favorable to Betley, there is a lack of proof that Bates was guilty of willful and wanton misconduct. To be willful or wanton an act must either be intentional or it must be committed under circumstances exhibiting a reckless disregard for the safety of others, such as failure after knowledge of impending danger to exercise ordinary care to prevent injury, or a failure to discover the danger through recklessness or carelessness when it could have been discovered in the exercise of ordinary care. *Hocking v. Rehnquist* (1969), 44 Ill.2d 196, 254 N.E.2d 515.

Betley's own testimony absolved Bates of willful and wanton misconduct and, indeed, from any negligence at all. He said her car lights were on and that she did not drive with excessive speed; that her highest speed on Circle Avenue was 25 or 30 miles an hour (and in a deposition he said it was 20 to 25). Betley and Barbara Bork were riding in the back seat of the Bates car. Betley was sitting on the left-hand side directly behind Sandra Bates and Bork was on the right side. James Masonick sat between them. Joan Malee rode in the front seat. Betley

contradicted Bork's and Malee's testimony about their protesting to Bates that she was driving too fast. He said he neither complained about her speed nor cautioned her to take it easy on turns and he did not recall anyone else doing so. He placed the blame for the collision on Breslin. He said the Bates auto was into the intersection when he saw the headlights of Breslin's car approximately a half-block away, and he estimated Breslin's speed at more than fifty miles an hour. Masonick corroborated Betley. He was in a position to hear anything Bork and Malee said, and he testified that he heard no one complain to Bates or ask her to slow down. He further testified that the Bates auto was going 20 to 25 miles an hour as it neared Nina Avenue; when it was 30 feet from the intersection he saw car lights in the distance—100 to 150 feet away—and then, "It hit real quick."

■■■ Betley's contention that Bates was guilty of willful and wanton misconduct, rests entirely upon her admission to Officer Kersey that she was speeding and on the statements of Bork and Malee concerning their conversations with her. Mere violation of statutory speed limit does not constitute the willful or wanton misconduct required for the maintenance of an action by a guest. (*Bartolucci v. Falleti.*) Such evidence points to negligence; and negligence, as previously noted, is not synonymous with willfulness or wantonness; that Bates may have been negligent was not sufficient to permit a finding that her conduct was willful or wanton. There was no evidence that the traffic conditions at the intersection were so hazardous or the circumstances preceding the accident so threatening that they transformed her alleged excessive speed into conduct exhibiting a reckless disregard for the safety of her passengers. In consideration of Betley's testimony exonerating her of all fault, and the total lack of evidence that she was indifferent to consequences in the face of impending danger, a verdict should have been directed for her against Betley.

The judgments in favor of Breslin against Bates and Betley will be affirmed. The judgment in favor of Betley and against Bates will be reversed.

Affirmed in part; reversed in part.

McNAMARA and McGLOON, JJ., concur.