(No. 81-CC-2817–)

*In re* APPLICATION OF LOUISE E. JOBE.

*Opinion filed February 11, 1982.*

JEGEN & CARLSON (KURT A. CARLSON, of counsel), for Claimant.

TYRONE C. FAHNER, Attorney General (JAMES M. HOFERT, Assistant Attorney General, of counsel), for Respondent.

ROE, C. J.

This is a claim brought by Claimant, Louise E. Jobe, widow of police officer James E. Jobe, for benefits under the provisions of the Law Enforcement Officers and Firemen Compensation Act, hereinafter referred to as the Act. Ill. Rev. Stat. 1977, ch. 48, par. 281 *et seq.*

The case was assigned to a commissioner, but because all relevant facts were sufficiently set forth in the record, the parties stipulated that the case be submitted to the Court solely on the material in the file, including the parties' memoranda of law, without a hearing.

Officer Jobe died December 26, 1980, while a member of the police department of the city of Des Plaines, Illinois, as a result of injuries received on December 13, 1980.

On the latter date, at approximately 7:42 p.m., he

was proceeding westbound on Algonquin Road, Cook County, Illinois, in a squad car, as back up man, reporting to a domestic disturbance call.

At the Chicago and Northwestern tracks he stopped for a southbound freight train. As the train cleared the crossing he drove his squad car around the still lowered gates and was struck by a northbound train that had been concealed by the southbound train. According to witnesses neither the northbound train nor its headlights were visible prior to the accident.

An eyewitness described the occurrence as follows:

"We were driving West on Algonquin Road coming to the railroad crossing just West of Wolf Road. The gates had just gone down. There was a police car in front of us with his lights on but was delayed because of the train coming. He waited until the train going southbound had just passed and then proceeded to go around the gates just as a northbound train was coming along. He didn't even have time to see the other train coming because he jumped around the gates right after the southbound passed. The northbound train hit him in the left front fender and dragged him along with it about halfway down to the next crossing." (Statement of Denise Armstrong.)

The issue in this case is whether Claimant's husband was killed in the line of duty as that phrase is defined in section 2(e) of the Act.

"(e) 'killed in the line of duty' means losing one's life as a result of injuries received in the active performance of duties as a law enforcement officer, civil defense worker, civil air patrol member, paramedic, or fireman if the death occurs within one year from the date the injury was received and if that injury arose from violence or other accidental cause. *The term excludes death resulting from the willful misconduct or intoxication of the officer*, civil defense worker, civil air patrol member, paramedic, or fireman. *However, the burden of proof of such willful misconduct or intoxication of the officer . . . is on the Attorney General."* (Emphasis added.) Ill. Rev. Stat. 1977, ch. 48, par. 282(e).

The department of police, city of Des Plaines, has promulgated rules for responding to calls. The applicable Police Department Rule provides in part as follows:

"380.78 *Responding to Calls.* Member of the Department shall respond without delay to all calls for police assistance from citizens or other members. Emergency calls shall take precedence; however, all calls shall be answered

as soon as possible *consistent with normal safety precautions and vehicle laws. . . ."* (Emphasis added.)

Section 11—1201 of the Illinois Motor Vehicle Code (Ill. Rev. Stat. 1977, ch..95½, par. 11—1201) provides that no person shall drive any vehicle through, around, or under any crossing gate or barrier at a railroad crossing while such gate or barrier is closed or is being opened or closed.

Section 11—205 of the Illinois Motor Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 11—205) which provides various exceptions for drivers of emergency vehicles does not seem to give the driver of an emergency vehicle the right to drive around a lowered gate at a railroad crossing.

Clearly, Claimant's husband was guilty of negligence. The Accident Review Committee of the Des Plaines Police Department found that Officer Jobe's accident was "preventable."

However, the question before this Court is not whether the accident was preventable, nor is it whether Officer Jobe was guilty of negligence, but whether his death resulted from wilful "misconduct" within the meaning of the term as used in that portion of the Act defining "killed in the line of duty."

The burden of proving such wilful misconduct is on the Attorney General. Respondent pointed out that interpretation of this term is an issue of first impression in this Court and suggested that the standards of wilful and wanton misconduct as ordinarily applied in tort litigation, and in particular, the standards and definitions developed with reference to the Illinois Guest Statute (Ill. Rev. Stat. 1979, ch. 95½, par. 10—201) be applied in making our determination. Respondent's memorandum explains the standard as follows:

"The requirement that the defendant be found to have been guilty of wilful misconduct is a prerequisite in several other statutory causes of action in this State. The Guest Statute, Ill. Rev. Stat. 1979, Ch. 95½, par. 10—201, provides that a guest shall not have a cause of action against the driver, unless the driver was guilty of wilful misconduct. The definition of wilful misconduct, as it relates to the Guest Statute, is set forth in *Griffin v. Darda*, 28 Ill.App.2d 693, 329 N.E.2d 245, (1975). In *Griffin*, supra, the court, at page 248, defined wilful misconduct, as follows:

'Wilful and wanton misconduct is a conscious disregard for one's own safety and that of others.'

The court continued, at page 248, by stating that the concepts of negligence and wilful misconduct are not synonymous. The court set forth the difference between these concepts, at page 248, as follows:

'The degree of culpability is greater under a charge of wilful and wanton . . . The proof is distinguishable; less evidence is required to prove negligence.'

In *Breslin v. Bates*, 14 Ill.App.3d 941, 303 N.E.2d 807 (1973), the court, at page 813, stated that the determination of whether an act is wilful and wanton depends upon the circumstances in each case and constitutes a question of fact. The court, at page 813, defined wilful misconduct as follows:

'To be wilful or wanton an act must either be intentional or it must be committed under circumstances exhibiting a reckless disregard for the safety of others, *such as failure after knowledge of impending danger to exercise ordinary care to prevent injury, or a failure to discover the danger through recklessness or carelessness when it could have been discovered in the exercise of ordinary care.*' (Emphasis added)

The court, in the above case, at page 814, concluded as follows:

'There was no evidence that the traffic conditions at the intersection were so hazardous or the circumstances preceding the accident so threatening that they transformed her alleged excessive speed into conduct exhibiting a reckless disregard for the safety of her passengers.' "

We decline to accept this standard. While it may be appropriate for governing the day-to-day affairs of the public at large, we do not think it is the correct standard to apply to law enforcement officers in the context of the Act. As the *Breslin* case, *supra*, pointed out, what is simple negligence, wilful and wanton negligence, or wilful misconduct depends on the circumstances of the case. The very nature of a law enforcement officer's duties require that he take risks to which the ordinary public is not even exposed. We point out that the Act in

part defines a law enforcement officer as (one) in a position "involving law enforcement and protection of the public interest at the risk of that person's life." To hold that a law enforcement officer was engaged in wilful misconduct when he exhibited a disregard for his own safety would be contrary to the purposes of the Act and disqualify many deserving officers. However, we decline to set forth a standard in this case to be used as precedent for others for we think that the determination should be made on a case-by-case basis which allows for taking into consideration all of the attendant circumstances of the incident.

In the case at bar Officer Jobe did not endanger anyone's safety but his own. In taking the risk he did he may have been in violation of a provision of the Illinois Motor Vehicle Code but we think it is important to look at the factors surrounding his actions. He was responding as a backup officer to a domestic disturbance call. As both counsel for the State and the Applicant pointed out in their memoranda, this type of call is very dangerous and, according to the F.B.I. report, domestic disturbance calls were responsible for the highest percentage of police officer fatalities between 1970 and 1979. There was no indication whatsoever that Officer Jobe was intentionally trying to get himself hurt. He evidently thought that it was imperative that he answer the call immediately and disregarded his own safety to do so.

Officer Jobe may have been negligent and, with perfect hindsight, it can be said that he exhibited poor judgment. However, under the circumstances, we think, that he was not engaged in wilful misconduct as contemplated in the Act. We find that Officer Jobe was killed in the line of duty.

It is hereby ordered that Louise E. Jobe be, and

hereby is awarded the sum of $20,000.00 (twenty thousand dollars and no cents).