NO. 4-98-0328

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,   )   Appeal from

Plaintiff-Appellee,          )   Circuit Court of

v.                           )   Piatt County

TERRY D. POWELL,                       )   No. 97CM150

Defendant-Appellant.         )   

                                       )   Honorable 

                                       )   John P. Shonkwiler,

                                       )   Judge Presiding.

_________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

In January 1998, a jury convicted defendant, Terry D. Powell, of two counts of domestic battery (720 ILCS 5/12-

3.2(a)(2) (West 1996)), and the trial court later sentenced him to probation subject to various conditions, including that he serve 120 days in jail.  Defendant appeals, arguing that (1) the State failed to prove him guilty beyond a reason­able doubt; (2) the court made certain evidentiary rulings that deprived him of a fair trial, including admitting testimony that defendant refused to answer questions he was asked by a deputy sheriff; and (3) the court abused its discre­tion by impos­ing an improper condition of proba­tion.  We agree that the court erred by admit­ting evidence of defendant's refusal to answer the deputy, and accordingly we reverse and remand for a new trial.  

I. BACKGROUND

Because we are reversing and remanding for a new trial, we discuss the evidence presented at defendant's trial only to the extent necessary to put the trial court's evidentiary ruling at issue in context.    

The events at issue occurred on the evening of November 11, 1997, at defendant's residence, where he lived with his wife, Sandra, and their 13-year-old daughter, Vanessa.  As defendant and Sandra prepared dinner, they started to argue.  Their argu­

ment became heated, and defen­dant either inten­tional­ly or inad­

vertently spit on Sandra and then grabbed her by the neck and choked her.  Vanessa, who had been using a cordless tele­phone in another room, heard the argu­ment and came into the kitchen, still carrying the telephone.  Vanessa become upset upon seeing defen­

dant choke Sandra, and she started hitting defendant with the tele­phone.  Defendant then threw or pushed Vanessa down, and she became more upset and ran out of the house.  When defen­dant real­

ized Vanessa had fled the residence with the cordless phone, he pulled the phone stand off the wall.

Vanessa ran to a nearby resi­dence occu­pied by her older sister and her sister's roommate, Roberta Morris.  When Vanessa ar­rived, Morris noticed that Vanessa was shaking and had tears on her cheeks, so Morris comforted her.  Vanessa also had no shoes on and her socks were muddy and wet.  

Morris called the police, and two deputy sher­iffs arrived a few minutes later at defendant's residence.  Meanwhile, Sandra had left that resi­dence to drive around looking for Vanessa.  Sandra searched unsuccessfully for Vanessa for 15 to 20 min­utes and then returned to the residence.  The depu­ties were already there and had been for several min­utes.  They had been knocking on the door, but defen­dant, who was inside, had not responded.  

Sandra let the deputies in the residence, and they asked to speak to defendant.  They went to defendant's bed­room, where he was in bed.  Sandra origi­nally told the offi­cers that she and defendant had been arguing but nothing had hap­pened.  When the officers first spoke with defendant in the bedroom, they asked him what had happened, and he also responded that nothing had happened.    

After speak­ing with defen­dant, one of the deputies left to speak with Vanessa, who was still at Morgan's resi­dence.  Vanessa provided a differ­ent version of events, which the deputy related to Sandra upon his return to her residence.  Sandra then admit­ted that defen­dant had spit on her and choked her.  

Deputy Todd McCabe's testimony provided much of the previous information.  At this point in his direct examination, the prosecutor questioned McCabe about what hap­pened next, and he testified as follows:   

"Q.  After you spoke with Sandra the second time, Deputy McCabe, you then went back and spoke with the defendant ***?

A.  Yes I did.

Q.  Did you ask him if Sandra hit him?

A.  Yes I did.

Q.  And what was his response?

A.  He said she did not.

Q.  Did you ask him if he grabbed his wife and daughter around the neck?

A.  Yes I asked him that.

Q.  And that was your next question?

A.  Yes.  

Q.  What was his response?

A.  He wouldn't answer."

Immediately prior to the above testimony, defense counsel objected when the prosecutor asked McCabe if he spoke with defendant after speaking for a second time with Sandra.  Out of the presence of the jury, defense counsel argued that elicit­

ing testimony from McCabe that defendant refused to answer his questions was tantamount to telling the jury that defendant exercised his right to remain silent and was thus inappro­priate.  The State responded that because McCabe's questioning of defen­

dant did not constitute a custodial interro­gation, but was merely a prelimi­nary examination at the scene, constitutional ramifi­ca­

tions did not arise.  The trial court over­ruled defense counsel's objec­tion and stated that it agreed with the State's analy­sis.  

On this evi­dence, the jury con­vict­ed defen­dant of two counts of domestic battery, and this appeal followed.

II. ANALYSIS

Defendant argues that the trial court erred by permit­

ting the State to question McCabe about defen­dant's refusal to answer McCabe's questions.  Defendant points out that when this occurred, defendant had not yet testi­fied; there­fore, nothing about defendant's refusal to answer questions was then admissible to discredit any excul­pa­tory testi­mony defendant had given.  Defen­dant contends that McCabe's testimony about defendant's refusal to answer McCabe's ques­tions had no probative content and seriously preju­diced defendant.  We agree. 

A. The Tacit Admission Rule

In civil cases, the law has long recognized that a party's silence when confronted with a statement made in his pres­ence under circum­stances that would normally call for a denial consti­tutes an admission.  See 
Bailey v. Bensely
, 87 Ill. 556 (1877); 
Dill v. Widman
, 413 Ill. 448, 454, 109 N.E.2d 765, 769 (1952); 
Breslin v. Bates
, 14 Ill. App. 3d 941, 947, 303 N.E.2d 807, 812 (1973).  This doctrine also applies under certain circumstanc­es in criminal cases, but its application there has been much more restricted.  In 
People v. Aughinbaugh
, 36 Ill. 2d 320, 322-23, 223 N.E.2d 117, 119 (1967), the supreme court ad­

dressed this doctrine--calling it the "tacit admission rule"--as follows:

"While the tacit admission rule obtains in this State, and the silence of a defendant  in the face of an accusation of guilt may be shown at his trial as evidence of guilt, such evidence should be received with caution and only when the conditions upon which it be­

comes admissible are clearly shown to exist."

Over 60 years ago, the Supreme Court of Illinois addressed the issue of a defendant's silence in the face of accusations in 
People v. Rothe
, 358 Ill. 52, 57, 192 N.E. 777, 779 (1934), and the court wrote the follow­ing:  

"The court permitted the prosecution to prove by an officer that the defendants re­

fused to make a statement at the police sta­

tion.  In this refusal they were within their rights, and the fact that they refused to make a statement had no tendency to either prove or disprove the charge against them.  The admission of this evidence was prejudi­

cial, and since it was neither material nor relevant to the issue being tried, it should have been excluded."  

See also 
People v. Wright
, 32 Ill. App. 3d 736, 741, 336 N.E.2d 18, 22 (1975), where the court cited 
Rothe
 and wrote the follow­

ing:  

"Long before the United States Supreme Court held, in 
Miranda v. Arizona
 (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, that defendants have a right to re­main silent in the face of police interroga­tion, the Illi­nois Supreme Court held it was error for the State to offer testimony as to defen-dants' refusal to make a statement."

In addition, in 
People v. Savory
, 105 Ill. App. 3d 1023, 1032, 435 N.E.2d 226, 232-33 (1982), the court wrote that it did not need to address any constitutional questions raised by the State's use of a defendant's tacit admission in a criminal case be­cause, under the circumstances of that case, "[t]he use by the State of defendant's statement that he did not want to talk to the police from which to draw a direct inference of guilt was improper."  Despite this impropriety, the court affirmed the defendant's convic­tion on the ground that the evidence of his guilt was so strong that the error was harmless beyond a reason­

able doubt.  
Savory
, 105 Ill. App. 3d at 1032, 435 N.E.2d at 233.

The defendant in 
Savory
 exhausted his state appeals and then sought federal 
habeas
 relief.  Ultimately, his case reached the Seventh Circuit Court of Appeals, which then had occasion to address the admissibility of his tacit admission.  That court upheld the federal district court's denial of 
habeas
 relief by agreeing with the state courts that the errors committed at defendant's trial were harmless beyond a reasonable doubt.  
United States ex rel. Savory v. Lane
, 832 F.2d 1011, 1020 (7th Cir. 1987).  In reaching its decision, the seventh circuit wrote the follow­ing:

"Because appellant did not take the stand, and the [S]tate's purpose in referring to appellant's silence was to suggest that he was guilty (rather then to impeach his testi­

mony), [this case] *** in­volves the ap­pli­ca­

tion of 
Grif­fin v. Cali­fornia
, 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229 (1965).  That case held that neither the prosecutor nor the court may invite the jury to draw an infer­ence of guilt from an accused's failure to take the stand.  ***

While it is true that 
Griffin
 involved governmental use of the defendant's silence at trial, rather than when initially ques­

tioned by police, *** we do not believe these factors make a difference.  The right to remain silent, unlike the right to counsel, attaches before the institution of formal adversary proceedings.  ***  In this respect, we believe 
Griffin
 remains unimpaired and applies equally to a defendant's silence before trial, and indeed, even before arrest.

Thus, [this] case is distinguishable from the cases the [S]tate cites such as 
Fletcher v. Weir
, 455 U.S. 603, 71 L. Ed. 2d 490, 102 S. Ct. 1309 (1982) and 
Jenkins v. Anderson
, 447 U.S. 231, 65 L. Ed. 2d 86, 100 S. Ct. 2124 (1980), where the government used the defendant's silence to impeach his trial testimony.  After all, there is no constitu­

tional right to commit perjury, which im

peachment is designed to detect.  ***  The cases which have al­lowed im­peach­ment by si­

lence rely on the fact that the defendant opens himself to im­peachment by taking the stand.  See 
Fletch­er
, 455 U.S. at 605-06, 102 S. Ct. at 1311-12; 
Jenkins
, 447 U.S. at 235-

36 & n.2, 100 S. Ct. at 2127-28 & n.2.  There is, on the other hand, a consti­tutional right to say nothing at all about the allegations.  While the presence of 
Miranda
 warnings might provide an additional reason for disallowing use of the defendant's silence as evidence of guilt, they are not a necessary condition to such a prohibition.  

In sum, we believe that the [S]tate's suggestion that use of a defendant's silence to impeach his trial testimony presents a constitutional issue, but use of his silence to imply guilt does not, is nothing short of incredible, given the language of our consti­

tution and the interpretation it has been consistently given."  
Savory
, 832 F.2d at 1017-18.

Although the seventh circuit makes a strong case for the unconstitutionality of applying the tacit admis­sion rule to a criminal defendant under police question­ing, we respect­fully decline to go that far.  We think it possi­ble--even if highly unlikely--that a scenario could arise in which a defendant's tacit admission might be probative.

Professor Michael H. Graham has discussed the circum­

stances under which the tacit admission rule applies in crimi­nal cases, as follows:

"Evidence must be introduced sufficient to support a finding *** that in light of the totality of the circumstances, a statement was made that the defendant heard, under

stood, had an opportunity to deny, contra­

dict, or object, and in which the defendant by his silence acquiesced.  In addition the court alone must determine that it is more probably true than not true *** that the statement was such that under the circum

stances it would naturally be expected that an innocent person would deny the truth of the statement if he believed it to be untrue.  [Citations.]  The burden of proof belongs to the prosecution."  M. Graham, Cleary & Gra

ham's Handbook of Illinois Evidence §802.7, at 679 (6th ed. 1994) (hereinafter Graham's Handbook); Graham's Handbook §802.7, at 203 (Supp. 1998).

We believe Professor Graham provides appropriate guidance regard­

ing the tacit admission rule, and his analysis should be applied to future attempts by the State to introduce a defendant's tacit admission.

Professor Graham also shared many of the concerns expressed by the seventh circuit in 
Savory
, when he wrote the following:

"In addition to the inherently ambiguous nature of the inference itself, 
United States v. Hale
, 422 U.S. 171 (1975), other consider­

ations raise doubts as to the propriety of applying the [tacit admission] rule in crimi­

nal cas­es, espe­cially when an accusation to the defen­dant is made under the auspices of law en­forcement personnel.  Silence may be moti­vat­ed by prior experience or the advice of coun­sel.  ***  Moreover, the accused would effec­tively be compelled to speak, either at the time or upon the trial, by way of ex

plaining her reasons for remaining silent, which to say the least, crowds her privilege against self-incrimination uncomfortably.  ***  Thus, while pre-arrest silence not in­

duced by gov­ernment action may be employed to 
impeach
 the criminal defendant, 
Jenkins v. Anderson
, 447 U.S. 231 (1980); 
People v. Manley
, 222 Ill. App. 3d 896, 165 Ill. Dec. 298, 584 N.E.2d 477 (1991), and even post-arrest silence occurring prior to the giving of 
Miranda
 warnings, 
Miranda v. Arizona
, 384 U.S. 436 (1966), may be employed to 
impeach
 the crimi­nal defendant, 
Fletcher v. Weir
, 455 U.S. 603 (1982), silence in the face of a pre-arrest statement should be received as an admission only with extreme caution."  Gra

ham's Hand­book §802.7, at 679-80.  

The concerns the supreme court expressed in 
Aughinbaugh
 are fully justified by the circumstances in the present case.  Defendant's silence here was probative of nothing.  He was asked by law enforcement officers if he had spit on and choked his wife, and his silence may have been motivated by nothing more than his prior experi­ence or the advice of counsel.  

The trial court here did not deter­mine (using Professor Graham's analysis) that it was more proba­bly true than not true that the circumstances under which accusa­tory questions were asked defen­dant would natu­rally be expect­ed to induce an inno­cent person to deny the truth of the state­ment if he believed it to be untrue.  Accord­ingly, we hold that the court erred by admitting defendant's silence in response to McCabe's question.  

B. Reversible Error

The State contends that even if the evidence of defen­

dant's silence was improperly admitted, its case was so strong that the error was harmless.  We disagree.  Upon reviewing the admissible evidence, we conclude that the evidence was sufficient to support a finding of guilt beyond a reasonable doubt.  Thus, defendant faces no risk of double jeopardy and may be re­tried.  See 
People v. Cruz
, 162 Ill. 2d 314, 374, 643 N.E.2d 636, 664 (1994).  However, the State's evi­dence was far from over­whelm­ing, and we view the error in admit­ting testi­mo­ny regard­ing defen

dant's silence as seriously affect­ing his right to a fair trial.

The State also argues that defendant has waived this issue by not filing a pretrial motion to suppress evidence.  However, we agree with defendant's rejoinder that defendant could hardly be expected to file such a motion when, in fact, there was no statement of his to suppress.  After all, the matter at issue in this case is defendant's 
silence
.

III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and remand for a new trial.

Reversed and remanded.

KNECHT, P.J., and McCULLOUGH, J., concur.