BARBARA FITZPATRICK, Plaintiff-Appellant, v. A C F PROPERTIES GROUP, INC., Defendant-Appellee.

Second District No. 2—91—0670

Opinion filed July 2, 1992.

Richard S. Connors, of Chicago, for appellant.

John P. McTigue, of McKenna, Storer, Rowe, White & Farrug, of Wheaton, and James P. DeNardo, of McKenna, Storer, Rowe, White & Farrug, of Chicago (Christine L. Olson, of counsel), for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Barbara Fitzpatrick, brought a multicount personal injury action against defendant, A C F Properties Group, Inc. (ACF), for damages Fitzpatrick allegedly sustained when she was sexually assaulted in her apartment at the Maple Lakes Apartments (Maple Lakes), which was owned by ACF. Count I of plaintiff's fourth amended complaint alleged a negligence cause of action; count II alleged willful and wanton conduct; count III alleged a violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*); count IV alleged common-law fraud; count V alleged negligent infliction of emotional distress; and count VI sought recovery of plaintiff's security deposit. The case proceeded to trial before a jury. At the close of plaintiff's case, the trial court entered directed verdicts in favor of defendant as to counts II through VI. At the conclusion of all the evidence, the jury returned a verdict in favor of defendant and against plaintiff on the remaining negligence count. The trial court denied plaintiff's post-trial motion for judgment notwithstanding the verdict or a new trial, and plaintiff filed her timely notice of appeal.

On appeal, plaintiff purports to raise the following issues: (1) whether she is entitled to a new trial where the record on appeal does not contain a jury verdict or judgment order in favor of either party; (2) whether the trial court committed reversible error in refusing to allow plaintiff to present spoliation evidence; (3) whether plaintiff was denied her right to a fair and impartial trial; (4) whether the circuit court of Cook County erred by transferring this case to Du Page County under the doctrine of *forum non conveniens*; and (5) whether the trial court committed reversible error in directing verdicts in favor of defendant on counts II through VI of plaintiff's complaint. Though raised in her post-trial motion, plaintiff in her appellate briefs to this court has not requested or presented any argument seeking either judgment notwithstanding the verdict or a finding that the jury's verdict on count I was against the manifest weight of the evidence.

As stated, plaintiff was a tenant at Maple Lakes, which was owned by defendant. Plaintiff had originally moved into a studio apartment in 1984 and later moved into a one-bedroom apartment in May 1985. Before plaintiff moved into her first apartment, she visited Maple Lakes with her mother. At that time, plaintiff's mother asked whether the premises were safe. The mother testified that an unidentified employee told her that there were no crimes at Maple Lakes. In the early morning hours of December 28, 1985, a person entered

plaintiff's apartment through a bedroom window and sexually assaulted her. After the occurrence, plaintiff moved out of the apartment and did not pay rent for January 1986. Defendant did not return plaintiff's security deposit.

The window in the bedroom of plaintiff's apartment consisted of two separate panes of glass, consisting of an inner and outer, or storm, window. Plaintiff testified that in November 1985 her inner bedroom window would not shut or lock. She reported this to defendant in November. On November 14, 1985, a repair order was left in her apartment. Plaintiff did not inspect the bedroom window after November 14, assuming that the window would close, even though the bedroom was colder than the rest of the apartment. Plaintiff did not complain to Maple Lakes about this condition. In addition, plaintiff did not recall any problem with the storm window and never complained of a problem with that window.

Antonio Hernandez, the chief of maintenance at Maple Lakes, testified that he performed the repair work on the bedroom window in plaintiff's apartment. According to Hernandez, he fixed the lock, and when he left, the latch on the inside window was working properly. He checked all the windows at the time and closed the windows and checked the locks, all of which were working properly. Plaintiff's mother testified that she went to clean plaintiff's apartment the day after Christmas 1985. She testified that the bedroom window at that time was open. Plaintiff's mother closed the inside window, which did not lock, and put a tool in the track of the window. Plaintiff's mother did not know if the outer storm window locked.

Officer Steven Pugsley, who inspected plaintiff's apartment the night of the assault, testified that the lock on the inner bedroom window did not work. He did not recall anything regarding the outer window. Officer Terrence Freeman was the evidence technician who inspected plaintiff's apartment. Officer Freeman did not check the storm window, but there was snow packed in the track of that window. He closed the storm window to the point where the snow prohibited the window from closing further. Freeman stated that the inner window did not lock, but that he did not include this detail in his report.

Plaintiff moved out of her apartment on January 6, 1986. Victoria Torres, a manager at ACF, inspected the apartment after the plaintiff moved out. The inspection report listed nothing wrong with plaintiff's apartment and did not indicate any necessary repairs. Antonio Hernandez, the maintenance man, was requested to perform maintenance work on the apartment after plaintiff moved out, but there was

no testimony that Hernandez actually performed any repairs in the apartment.

Plaintiff called Dr. David Coynik, a dermatologist, to testify regarding plaintiff's alleged damages suffered as a result of the sexual assault. Dr. Coynik testified that plaintiff acquired HPV, a sexually transmitted virus, as a result of the incident. Plaintiff also called Dr. George Banuelos, an obstetrician. Dr. Banuelos testified that he diagnosed the HPV condition in a prenatal examination of plaintiff in November 1989. Dr. Chester Scrignar testified that he diagnosed plaintiff as suffering from post-traumatic stress disorder. Dr. Scrignar stated that the sexual assault was the trauma which caused this condition. Dr. James Dolan testified on defendant's behalf regarding when plaintiff acquired the HPV virus. Dr. Dolan testified that there was no way to tell with any reasonable degree of certainty when plaintiff acquired the virus and he could not say that she acquired the virus on the night of the sexual assault. As stated, the trial court entered verdicts in favor of defendant on counts II through VI of plaintiff's complaint and the jury returned a verdict in favor of defendant on the remaining negligence count. Plaintiff appealed following denial of her post-trial motion.

■ Plaintiff's first contention is that she is entitled to a new trial based on the fact that the record on appeal does not contain a jury verdict or judgment order in favor of either party. We disagree. As defendant correctly notes, this court on January 16, 1992, granted defendant's motion to supplement the record with the signed jury verdict and order entering judgment on the verdict, upon the filing of a certification by the trial court that the jury verdict form and entry of judgment was an accurate copy of the jury's original verdict and the original judgment that was entered and filed in the trial court. The supplemental record on appeal does in fact contain a copy of the original jury verdict and judgment order and is accompanied by the trial court's certification of accuracy. As such, plaintiff's argument is without merit.

Next, we consider plaintiff's contention that it was error to transfer this case from Cook County to Du Page County under the doctrine of *forum non conveniens*. In this respect, defendant points out that plaintiff did not file a response in the trial court objecting to the motion to transfer venue, nor did she raise the issue in her post-trial motion. As such, plaintiff has waived consideration of this issue on review. (*Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 67; *Hinduliak v. Inn of the Four Lakes, Inc.* (1968), 98 Ill. App. 2d 42, 47.) We also believe that plaintiff has failed to adequately brief this issue, in violation of

Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)). In her initial brief, plaintiff fails to cite any authority whatsoever in support of her argument that transfer was improper. In her reply brief, plaintiff provides case law for the general proposition that certain factors must strongly favor a transfer of venue (*Griffith v. Mitsubishi Aircraft International, Inc.* (1990), 136 Ill. 2d 101; *Torres v. Walsh* (1983), 98 Ill. 2d 338), but then fails to adequately analyze or argue why such factors did not favor defendant in this case. Rather, plaintiff simply concludes that the factors did not favor defendant. Plaintiff's argument may also be considered waived on this basis. 134 Ill. 2d R. 341(e)(7).

■ Even if plaintiff had not so effectively waived consideration of this issue, we agree with defendant that transfer of venue was not improper where plaintiff's injuries occurred in Du Page County, plaintiff resided in Du Page County at the time of the occurrence, plaintiff's apartment, which was owned by defendant, was located in Du Page County, the investigating police officers were located in Du Page County, and plaintiff's initial medical treatment occurred in Du Page County. Based on these facts, we cannot conclude that the circuit court of Cook County abused its discretion in granting defendant's *forum non conveniens* motion. *Haight v. Aldridge Electric Co.* (1991), 215 Ill. App. 3d 353, 358-59.

Plaintiff's next contention is that the trial court erred in refusing to allow the presentation of spoliation evidence. Plaintiff's argument in this regard is somewhat confusing in that it actually contains several, distinct legal issues. In essence, plaintiff argues that (1) the trial court erred in denying her petition for a rule to show cause against defense counsel regarding plaintiff's counsel's post-occurrence inspection of the apartment; (2) the trial court erred in granting defendant's motion *in limine* precluding the introduction of post-occurrence repairs to the window; (3) she should have been allowed to present evidence of spoliation or intentional destruction of evidence; and (4) she was entitled to a negative inference against defendant regarding alleged changes in the apartment window.

We first address the trial court's denial of plaintiff's petition for rule to show cause. The basis of the petition was plaintiff's allegation that defendant's attorney had violated a prior court order by refusing to allow plaintiff's attorney to inspect plaintiff's former apartment. On September 5, 1990, the trial court granted plaintiff's motion to inspect the apartment. On September 21, plaintiff's attorney wrote a letter to defendant's attorney requesting information as to whom he should contact regarding the arrangements for entry into the apartment. On September 26, defendant's attorney responded by letter to

plaintiff's attorney, indicating that he (defendant's attorney) would set up an inspection and requesting reasonable advance notice due to the fact that the apartment was now occupied. On February 27, 1991, four days prior to the case going to trial, plaintiff's attorney contacted defense counsel and demanded access to the apartment. On February 28, defendant's attorney sent a letter to plaintiff's attorney by facsimile transmission stating that, due to the fact that the building manager had just undergone minor surgery, and due also to his own trial preparations and family commitments, he would be unable to accommodate plaintiff's request on such short notice. Nevertheless, plaintiff's attorney, along with two police officers, did in fact obtain access to the apartment on the Saturday prior to trial and conducted an inspection.

Based on the above facts, we cannot conclude that the trial court erred in denying plaintiff's petition. As the court noted at the hearing on the petition, plaintiff had six full months to inspect the premises, but waited until four days prior to the trial date to attempt to do so. We note that Supreme Court Rule 214, relating in part to the inspection of real estate for discovery purposes, provides that requests to inspect "shall specify a reasonable time, which shall not be less than 28 days except by agreement or by order of court." (134 Ill. 2d R. 214.) In addition, there is absolutely nothing in the record to support plaintiff's argument, raised at the hearing, that defense counsel's actions constituted a "deliberate attempt to keep [plaintiff's attorney] out of the apartment."

In any event, plaintiff's attorney did in fact obtain access to the apartment, and an inspection was completed. And, this was accomplished on the very day that, according to plaintiff's counsel's phone message to defense counsel, inspection was originally sought. Thus, plaintiff has failed to demonstrate that she was prejudiced by defense counsel's conduct. See *In re Marriage of Schaefer* (1987), 161 Ill. App. 3d 841, 849.

Plaintiff also argues that she should have been allowed to present evidence of spoliation and that she was entitled to a negative inference against defendant regarding the alleged changes in the window. In this regard, plaintiff suggests that the facts of this case give rise to an independent cause of action for the tort of spoliation of evidence and that she was entitled to have the jury instructed on spoliation and the negative inferences that may arise from the intentional destruction of evidence.

We point out that plaintiff failed to plead a cause of action for spoliation in her fourth amended complaint and neglected to seek

leave to amend her complaint to add this theory. This despite the trial court's comment to plaintiff's attorney, at the hearing on defendant's motion *in limine*, questioning whether there might be a different cause of action wherein such evidence might be relevant and admissible. As such, the rule prohibiting the presentation of a new theory on appeal prohibits its consideration now. *Johnson v. Hilton Hotel Corp.* (1989), 190 Ill. App. 3d 197, 201; *Miscevich v. Commonwealth Edison Co.* (1982), 110 Ill. App. 3d 400, 405.

■ Plaintiff also failed to tender jury instructions either seeking recovery under a spoliation theory or informing the jury that the destruction of evidence gives rise to a presumption that the evidence would have been unfavorable. This too, despite the fact that plaintiff's attorney, at the hearing on defendant's motion *in limine*, argued that he would be entitled to such an instruction. We presume, as does defendant, that plaintiff's argument in this regard is that she was entitled to have the jury instructed pursuant to Illinois Pattern Jury Instructions, Civil, No. 5.01 (2d ed. 1971), which provides that a presumption arises that the evidence a party fails to produce would be unfavorable to him. Since plaintiff failed to tender such instructions to the trial court, she may not now argue that she was entitled to have the jury so instructed. (134 Ill. 2d R. 366(b)(2)(i); *McKinney v. Coca Cola Bottling Co.* (1988), 170 Ill. App. 3d 362, 363.) Since "[a] plaintiff cannot take the position on appeal that a case should have been presented to the jury with different instructions than those which were given unless at trial he tendered instructions which set forth the statement of the law he contends, on appeal, would have been the proper one," plaintiff has waived consideration of these issues. *Auton v. Logan Landfill, Inc.* (1984), 105 Ill. 2d 537, 549.

In any event, we feel compelled at this juncture to comment on what we perceive to be inaccuracies, if not outright misrepresentations, in plaintiff's discussion of the spoliation issue. One of the bases for plaintiff's contention that she should have been allowed to present evidence of spoliation was her offer of proof on this issue, wherein plaintiff set forth the testimony of Officer Freeman regarding the condition of the window upon inspection on March 2, 1991. In her brief, plaintiff states that Officer Freeman found that the window had been "tampered" with, "altered" or "destroyed." In the actual offer of proof, however, it is stated that Officer Freeman would testify that "subsequent remedial measures have been taken to repair or replace" the window. It is plaintiff, however, and not Officer Freeman, who makes the assumption to equate "repair" with "destruction," "tampering" or "spoliation."

In addition, plaintiff provides numerous citations to the record, all in support of the proposition that defendant opened the door to the issue of subsequent repairs to the window, thus negating the court's ruling on defendant's motion *in limine* precluding such evidence, by asserting the integrity of the window and denying subsequent repairs. Our review of the record reveals, however, that the majority of the testimony referenced by plaintiff concerned the condition of the lock and window on the night of the sexual assault and did not concern subsequent remedial repairs or the lack thereof. In addition, two of the supposedly door-opening statements were adduced during plaintiff's counsel's examination of witnesses, not defense counsel's. The only statement referenced by plaintiff that tends to support her argument in this regard concerned Maple Lakes maintenance worker Antonio Hernandez' statement that he did not work on the apartment window on January 9, 1986, shortly after plaintiff moved out of the apartment. However, this testimony was objected to by plaintiff's counsel, sustained by the trial court, and the question which induced the statement was withdrawn by defense counsel. Moreover, the statement did not assert that repairs had never been performed on the window.

Plaintiff also erroneously states that the trial judge himself believed the evidence showed the window had been "tampered" with and, further, that both the trial court and defendant were of the opinion that "even if there was proof of subsequent bad faith tampering" with the window plaintiff would be precluded from introducing such evidence. Such comments by the plaintiff constitute a clear mischaracterization of the record. What the trial court actually said was that defendant had a duty to "repair" the window post-occurrence and that it "apparently" did so. In addition, the defendant's actual position was and is that, even if it had in fact repaired or replaced the window, it had a right to do so absent an order prohibiting it from doing so. On both accounts, plaintiff has misstated the defendant's and the trial court's respective positions and comments. The mere fact that one chooses to characterize a "repair" or "replacement" as "destruction" or "bad faith tampering" does not make it so, plaintiff's contentions to the contrary notwithstanding. Plaintiff has simply failed to offer any competent evidence that defendant deliberately destroyed any evidence in this case.

■ That being said, we proceed to consider the propriety of the court's order granting defendant's motion *in limine* to preclude introduction of subsequent remedial repair or modification of the window. The well-established general rule is that evidence of subsequent reme-

dial measures is not admissible as proof of negligence. (*Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1, 14.) Such evidence may be introduced for other purposes (*Schaffner*, 129 Ill. 2d at 14), however, and as indicated, the plaintiff's offer of proof on this issue was that Officer Freeman would testify that, four years after the occurrence, the window was not in the same condition and that repair or replacement had occurred. At the hearing, the court ruled and plaintiff's attorney agreed that post-occurrence remedial repairs were inadmissible in a negligence action unless defendant opened the door to the issue by asserting that the window had not been changed in the four years since the occurrence. Since we have found, as indicated above, that there was in fact no evidence presented by defendant that the window was never repaired or replaced, the door was not opened so as to allow the introduction of rebuttal evidence on this point. (*Schaffner*, 129 Ill. 2d at 17.) We conclude, therefore, that the trial court did not err in granting defendant's motion *in limine*.

Next, we consider plaintiff's contention that she did not receive a fair and impartial trial. Specifically plaintiff argues that (1) the trial court improperly criticized and showed bias against plaintiff's attorney; (2) the court improperly denied her motion *in limine* to bar the introduction of evidence that she had dependents; (3) the court improperly allowed defense counsel to question Dr. David DeRamos as to when plaintiff acquired a sexually transmitted disease; (4) the court's treatment of plaintiff's expert, Dr. Charles Scrignar, was improper; (5) the court improperly prohibited the use of demonstrative evidence during the testimony of Officer Richard Berg; (6) the trial court improperly held hearings on defendant's motion for directed verdict prior to the time plaintiff had rested her case and prior to defendant having filed its motion; (7) the court improperly refused plaintiff's request to recall two witnesses; (8) the court erroneously allowed the introduction of a window model which had not been produced during discovery; and (9) defense counsel made improper remarks during closing argument.

■■ As to plaintiff's first point, she argues that the trial court's alleged bias against her attorney is evidenced by the court's comments that the attorney was from Cook County, that the attorney was unprofessional, that the attorney was unprepared, and by the court's threats to find counsel in contempt of court. We have carefully reviewed the transcript of proceedings wherein the complained-of remarks were made, and we agree with defendant that the remarks are largely taken out of context. The defendant correctly notes that in

each instance, the court's comments were not simply gratuitously made, but were in response to some improper action or comment by plaintiff's attorney. Moreover, none of the allegedly improper and prejudicial statements were made in the presence of the jury. As such, *People v. Kelley* (1963), 29 Ill. 2d 53, *People v. Lewerenz* (1962), 24 Ill. 2d 295, and *Pavilon v. Kaferly* (1990), 204 Ill. App. 3d 235, cited by plaintiff, in which improper comments were made before the jury, are inapposite.

Plaintiff also argues that the court improperly denied her motion *in limine* regarding dependents. We disagree and conclude that the complained-of evidence was relevant to the issue of plaintiff's claimed damages. (*Haight v. Aldridge Electric Co.* (1991), 215 Ill. App. 3d 353, 360-61.) In this regard, we believe that such evidence was relevant both as to the degree to which plaintiff allegedly suffered from a form of post-traumatic stress disorder and as to when plaintiff contracted the sexually transmitted virus.

■ Plaintiff correctly points out that Dr. Charles Scrignar testified that one of the diagnostic criteria for post-traumatic stress syndrome, a foreshortened sense of the future in which a person is unable to have loving feelings and believes that she will not have children, did not apply to plaintiff. However, we believe that while such testimony may serve to make evidence of plaintiff's desire and ability to have children, as shown by plaintiff's actual pregnancy, cumulative in nature, it does not render such evidence irrelevant or prejudicial. In addition, the fact that there was no dispute that the virus is transmitted by sexual contact, and not by childbirth, does not render evidence of pregnancy irrelevant or prejudicial where the virus was diagnosed during the pregnancy.

This brings us to another point we feel should be made. Contrary to plaintiff's argument, defendant did not elicit an undue amount of evidence concerning plaintiff's child or childbirth. Rather, the testimony, when it occurred, concerned plaintiff's pregnancy and was adduced primarily during the questioning of medical witnesses regarding their diagnoses of plaintiff's condition and opinions as to when the virus may have been acquired. We agree with defendant that, where it is undisputed that the virus was diagnosed and treated as part of a prenatal examination in 1989, four years after the sexual assault, inquiry into that diagnosis to refute plaintiff's claim that she contracted the virus on the night of the assault was not improper or prejudicial.

We also note that the case law plaintiff cites in support of her argument is distinguishable. In both *McCarthy v. Spring Valley Coal Co.* (1908), 232 Ill. 473, and *Pearson v. Ford Motor Co.* (1975), 32 Ill.

App. 3d 188, it was determined that statements to the jury that plaintiffs had wives and numerous children were improper attempts to evoke sympathy and enhance damages. Such is not the case here. We would also note that the court in *Pearson* nevertheless rejected the claim that such information in any way affected the question of liability and held that reversal on the question of damages alone was required. (*Pearson*, 32 Ill. App. 3d at 193.) In this case, of course, the jury never reached the question of damages.

Plaintiff also contends that Dr. David DeRamos was allowed to give improper testimony regarding plaintiff's sexually transmitted disease. Dr. DeRamos, a licensed physician in the second year of his residency program, had assisted in the delivery of plaintiff's child, conducted prenatal examinations wherein plaintiff's virus was detected, and also treated plaintiff mother and child. Dr. DeRamos testified, over plaintiff's objection, that in his opinion one could not determine exactly when plaintiff had contracted the virus and that it takes one to two months for the virus to develop into cervical warts. Plaintiff argues that Dr. DeRamos, who stated that he did not consider himself an expert in sexually transmitted diseases, was therefore not qualified to give expert testimony on the subject as the court allowed him to do.

Plaintiff correctly states that the test of competency of an expert is whether or not he exhibits sufficient knowledge of the subject matter to entitle his opinion to go to the jury. (*Taylor v. Carborundum Co.* (1969), 107 Ill. App. 2d 12, 18.) This court has stated that the modern standard for admissibility of expert testimony is whether such testimony will aid the jurors' understanding of the facts. (*Ketchum v. Dura-Bond Concrete, Inc.* (1989), 179 Ill. App. 3d 820, 831.) A trial court has broad discretion in determining if a witness has been qualified as an expert. *Taylor*, 107 Ill. App. 2d at 19.

■ Here, although the witness was still in his residency program at the time of trial, he was nevertheless a licensed physician and surgeon at that time, training in the specialized areas of obstetrics and gynecology. As stated, the witness was also one of plaintiff's treating physicians. And although Dr. DeRamos stated that he did not consider himself an expert in the area of sexually transmitted diseases, his background certainly supports a finding that he exhibited sufficient knowledge of the subject matter and that his testimony would aid the jury's understanding of the facts. As such, we cannot conclude that the trial court abused its discretion in allowing Dr. DeRamos' testimony.

■ Plaintiff also contends that Dr. DeRamos' testimony should have been barred since defendant failed to disclose that the doctor would be called as an expert and because Dr. DeRamos did not fall into the treating physician exception to the Rule 220 disclosure provision (134 Ill. 2d R. 220(b)(1)). However, plaintiff raises this particular argument for the first time in her reply brief. She did not object to DeRamos' testimony on this basis at trial, nor did she raise the issue in her post-trial motion or in her initial appellate brief. We therefore consider plaintiff to have waived this argument on appeal. 134 Ill. 2d Rules 341(e)(7), 366(b)(2)(iii); *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 348-49; *Friedman v. Park District* (1986), 151 Ill. App. 3d 374, 383.

Plaintiff next argues that the trial court's treatment of Dr. Charles Scrignar was improper. Specifically, plaintiff contends that the court improperly refused to allow Dr. Scrignar to leave the witness box to testify about the characteristics of post-traumatic stress disorder and also improperly interrupted Dr. Scrignar's testimony. We disagree as to both allegations.

■ First, we note that plaintiff failed to object at trial to the court's suggestion that Dr. Scrignar remain seated in the witness box and in fact acquiesced to this suggestion. As the doctor was about to begin his testimony on post-traumatic stress disorder, the following colloquy took place:

"[DR. SCRIGNAR]: ***

It's characterized by a number of things. If I have access to a pen or board perhaps I can make it clear.

MR. CONNORS [plaintiff's attorney]: Would Dr. Scrignar be allowed to come up to the board here and make more visual his testimony for the jury?

THE COURT: Perhaps he could just list the characteristics, sir.

MR. CONNORS: All right."

Since plaintiff failed to specifically object to this procedure and also failed to provide any authority in support of her argument that it was improper, the issue of its propriety is waived. (134 Ill. 2d R. 341(e)(7); *Friedman*, 151 Ill. App. 3d at 383.) In any event, as defendant correctly points out, Dr. Scrignar was quite adequately allowed to set forth the characteristics of post-traumatic stress disorder from the witness chair, and we fail to see how plaintiff has been prejudiced in this regard.

We also disagree with plaintiff's argument that she was prejudiced by the trial court's interruptions of Dr. Scrignar's testimony.

Generally, a trial judge should be afforded a wide latitude in his conduct of a trial, and a new trial will not be granted on the basis of a judge's remarks or conduct unless the remarks or conduct result in prejudice to a party. (*Oldenburg v. Hagemann* (1991), 207 Ill. App. 3d 315, 324; *Pavilon v. Kaferly* (1990), 204 Ill. App. 3d 235, 251.) Here, the trial court's comments served merely to instruct the witness to simply answer the questions put to him or to remind the witness that no questions were pending. After having reviewed all of the complained-of interruptions, it is clear that the court properly refrained from expressing an opinion concerning Dr. Scrignar's credibility or the weight to be accorded his testimony, and that the judge's remarks were not of such a nature that they created prejudice in the minds of the jurors. *Willson v. Pepich* (1983), 119 Ill. App. 3d 552, 559.

Plaintiff also contends that the court improperly prohibited the use of demonstrative evidence during the testimony of Officer Richard Berg. The evidence at issue is a sketch prepared by Officer Berg as part of his police report, diagraming the sexual assault suspect's trail as he left plaintiff's apartment. Defendant objected to the showing of the diagram through the use of an overhead-screen projector to the jury. The court sustained defendant's objection concluding that, while it was relevant whether the intruder entered and left the apartment by way of the window, where the intruder went after that was irrelevant.

We agree with the conclusion reached by the trial court and also with defense counsel's statement at trial that, even though admission of the evidence might not have been prejudicial to defendant, it simply was not relevant to the issues in this case. We also agree that *Walls v. Jul* (1969), 118 Ill. App. 2d 242, cited by plaintiff, is inapposite. As noted by defendant, the issue in *Walls* was the admissibility of a police diagram, not its relevance. *Walls*, 118 Ill. App. 2d at 249.

Plaintiff next contends that the trial court held hearings on defendant's motion for directed verdicts prior to the time she had rested her case and prior to defendant having actually filed its motion. Plaintiff also contends that the court improperly read case law and reviewed the evidence prior to plaintiff having rested. In this regard, plaintiff argues that the court improperly usurped the role of the jury, citing *Bebb v. Yellow Cab Co.* (1970), 120 Ill. App. 2d 454.

At the outset, we note that *Bebb*, the only case cited by plaintiff in support of her argument that the court's actions were premature and improper, is not on point. At issue in *Bebb* was whether the jury may have been influenced by certain comments and rulings of the

trial judge and whether such comments constituted an improper opinion on the evidence. (*Bebb*, 120 Ill. App. 2d at 465-67.) The complained-of actions at issue here did not take place in the presence of the jury.

▪▪▪ Moreover, we disagree that the trial court acted improperly. On Friday, March 8, 1991, after plaintiff's counsel had completed his examination of an expert witness, the following conversations between the trial court and the parties' attorneys took place:

"THE COURT: Do you have any further witnesses?

MR. CONNORS: No witnesses, Judge.

THE COURT: Would the Plaintiff rest at this time?

MR. CONNORS: Well, a few housekeeping matters on my exhibits I failed to introduce into evidence which we can do outside the presence of the jury.

\* \* \*

MR. CONNORS: Now, your Honor, at this time I neglected to introduce into evidence Plaintiff's 29 and 30 for identification.

\* \* \*

THE COURT: Plaintiff's Exhibits 29 and 30 are admitted. These were testified to by Officer Harrison.

Does the Plaintiff now rest?

MR. CONNORS: No.

Could we go off the record for a minute?

THE COURT: All right. Certainly. \* \* \*

The Plaintiff has rested now?

MR. CONNORS: No, no, Judge, I haven't rested because I'm—

THE COURT: Subject to—

MR. CONNORS: No, I haven't rested. I have to introduce those documents that—

THE COURT: Mr. Connors, there are certain materials you wish to introduce into evidence that have been previously marked before you rest your case; is that correct, sir?

MR. CONNORS: Well, now that I'm looking at them, I have to make a decision. Hold on. Well, yes, answer is yes, Judge, I guess I have to have them in now that I think about it.

\* \* \*

THE COURT: Exhibits 34 and 35 then will be admitted then subject to that understanding, Gentlemen, that we reached before the commencement of the trial.

MR. McTIGUE [defendant's attorney]: That's fine.

THE COURT: All right. The Plaintiff rests then with that understanding?

MR. CONNORS: Could we go off the record a second?

THE COURT: Yes, sir. ***

We're here then on the Plaintiff's motion or the Defendant's motion for a directed verdict on the various counts of the Plaintiff's complaint."

We believe it is clear from the above that the trial court reasonably, if mistakenly, thought that plaintiff was through calling witnesses and intended to rest her case, subject to the admission of several exhibits into evidence. Plaintiff's actions thereafter, when her attorney proceeded to address the merits of defendant's motion, support this conclusion. Upon reaching argument on count II, however, plaintiff made it clear that she intended to call additional witnesses. At that point, defendant withdrew its motion and delayed its presentation until the following Monday, after plaintiff had been allowed to call two more witnesses. As to the argument that the court began the hearings prematurely and reviewed the law and facts, the trial judge stated that he "anticipated" that defendant would file a motion for directed verdict at the close of plaintiff's case and had therefore familiarized himself with the evidence and relevant case law. The court was certainly correct in noting that defendants in the great majority of civil cases file such motions at the close of the plaintiff's case, and we see nothing improper in the actions taken here. Defendant's motion was in fact filed, as the court correctly anticipated.

■■ Plaintiff also contends that the trial court improperly denied her request to recall two witnesses and erroneously allowed the introduction of a window model which had not been physically produced during discovery. Plaintiff's brief, however, does not contain citation to any authority in support of these arguments and we consider them waived. (134 Ill. 2d R. 341(e)(7).) It is well settled that bare contentions without argument or citation to relevant authority do not merit consideration on appeal. *Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 608.

■■ Finally, plaintiff contends that she was denied a fair trial due to defense counsel's allegedly improper remarks during closing argument. As defendant correctly notes, plaintiff failed to object to the allegedly prejudicial comments at trial. As this court has stated in similar situations:

"[T]he rule generally adopted is that assignments of error based on alleged prejudicial conduct of opposing counsel will not be considered on appeal unless objection to the alleged prej-

udicial argument has been made in the trial court, a ruling of the trial court obtained and the record showing the objection and the ruling preserved, unless the remarks were so prejudicial that the parties litigant cannot receive a fair trial and the judicial process stand without deterioration." (*Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 135.) In any event, we have carefully reviewed those portions of defendant's closing argument to which plaintiff objects, and we are not persuaded that the remarks were so prejudicial that plaintiff was deprived of a fair trial. *Barreto*, 133 Ill. App. 3d at 135.

Plaintiff's last argument on appeal is that the trial court erred in directing verdicts in favor of defendant on counts II through VI of plaintiff's complaint. Defendant initially responds that this issue is waived because plaintiff's post-trial motion raising the issue fails to set forth facts or reasons from which plaintiff's conclusions are drawn. We disagree. This court has recognized that the general rule is that a post-trial motion need not even be filed to raise the issue on appeal of the granting of directed verdicts. (*Hladish v. Whitman* (1989), 192 Ill. App. 3d 561, 566.) Here, although plaintiff did not do so in a fact-specific manner, she clearly raised the issue in her post-trial motion. We proceed then to review the merits of plaintiff's argument, applying the well-established rule in addressing motions for directed verdict that verdicts ought to be directed only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.

We first address the directed verdict on count II, which sought punitive damages for defendant's alleged willful and wanton conduct. Plaintiff contends that, at the close of her case in chief, the evidence showed that defendant had assumed a duty to repair her window; had failed to adequately perform those repairs; had been put on notice of the presence of a rapist in the community; and had misled her to believe that the repair work had been satisfactorily completed. Plaintiff maintains that the existence of such evidence compelled denial of defendant's motion for directed verdict. We disagree.

In an action for willful and wanton conduct, plaintiff must show that defendant intentionally caused her injury or exhibited a reckless disregard for the safety of others. (*Valiulis v. Scheffels* (1989), 191 Ill. App. 3d 775, 789.) Such conduct may include a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness

when it could have been discovered by the exercise of ordinary care. (*Coleman v. Hermann* (1983), 116 Ill. App. 3d 448, 457.) In concluding that the trial court had erred in submitting to the jury a plaintiff's claim for punitive damages based on willful and wanton misconduct, our supreme court offered the following instructive language:

> "The present action was submitted to the jury on allegations of both negligence and willful and wanton misconduct. It must be recognized, however, that '[n]egligence is not the same as wantonness' (*Quad County Distributing Co. v. Burroughs Corp.* (1979), 68 Ill. App. 3d 163, 166), and that '[p]unitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence' (Restatement (Second) of Torts §908, comment *b*, at 465 (1979)). 'Since the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate—which is to say, conduct involving some element of outrage similar to that usually found in crime. The conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others.' (Restatement (Second) of Torts §908, comment *b*, at 464-65 (1979).) In this context, willful and wanton misconduct ' "approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." ' *Bresland v. Ideal Roller & Graphics Co.* (1986), 150 Ill. App. 3d 445, 457." *Loitz v. Remington Arms Co.* (1990), 138 Ill. 2d 404, 415-16.

██ Having carefully reviewed the record in the light most favorable to plaintiff, we cannot conclude that the evidence described above was sufficient to warrant submission of the willful and wanton conduct count to the jury. The proof adduced at trial was simply insufficient to establish that defendant had the requisite degree of culpability to support such a charge. As indicated above, evidence of willful and wanton conduct requires more than proof of mere negligence, and we believe that plaintiff has failed to meet that burden here.

Plaintiff also contends that the court erred in directing verdicts as to count III, which alleged a violation of the Consumer Fraud Act, and count IV, which alleged common-law fraud. Section 2 of the Consumer Fraud Act states, in pertinent part, as follows:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment

of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." (Ill. Rev. Stat. 1989, ch. 121½, par. 262.)

To prevail in a cause of action for fraudulent misrepresentation, or common-law fraud, a plaintiff must prove (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Gerill Corp. v. Jack L. Hargrove Builders, Inc.* (1989), 128 Ill. 2d 179, 193.

It has been stated that the Consumer Fraud Act affords broader protection than does the common-law action of fraud and that even if a plaintiff is unable to establish all the elements of fraud, she might recover under the Act, even for innocent misrepresentations. (*Buechin v. Ogden Chrysler-Plymouth, Inc.* (1987), 159 Ill. App. 3d 237, 249-50.) In any event, however, we conclude that the evidence at trial was insufficient to submit the case to the jury under either theory.

The basis for plaintiff's argument on appeal that the court erred in directing verdicts on counts III and IV is a statement made to plaintiff's mother regarding the safety of the premises. Plaintiff's mother testified that when plaintiff rented her first apartment at the Maple Lakes complex in May 1984, an unidentified person told her (plaintiff's mother) that there was no crime at Maple Lakes. Sometime subsequent to May 1984, however, plaintiff moved into a second apartment in the complex. As the trial court noted at the hearing on defendant's motion, there was no evidence presented that plaintiff's original apartment was unsafe. In addition, defendant correctly notes, and plaintiff does not refute, that no one at ACF made similar statements regarding safety when plaintiff moved to her second apartment. Moreover, plaintiff failed to present any evidence, other than that which was speculative at best in nature, that defendant's management knew of crimes at the complex or knew that statements to the contrary were false or that the unidentified person who spoke to plaintiff's mother in May 1984 intended to induce reliance. Finally, we cannot conclude that plaintiff's injuries were a direct and proximate result of defendant's alleged violation of the Act. See *Petrauskas v.*

*Wexenthaller Realty Management, Inc.* (1989), 186 Ill. App. 3d 820, 831-32 (criminal act of third party was not reasonably foreseeable as a matter of law and sexual assault victim's injuries were not proximately caused by landlord's alleged false representations concerning building safety, area crime and building code violations).

In summary, our review of the evidence fails to reveal sufficient proof of a knowingly false statement of material fact made with the intent to induce reliance (*Gerill*, 128 Ill. 2d at 193), or of any "deception, fraud, false pretense, false promise, misrepresentation" or "concealment, suppression or omission" (Ill. Rev. Stat. 1989, ch. 121½, par. 262) sufficient to submit either the question of common-law fraud or that of consumer fraud to the jury in this case. As such, the trial court did not err in directing verdicts on these counts.

■■■ Plaintiff next contends that the court erred in directing a verdict on count V, which alleged negligent infliction of emotional distress. The problem, as we see it, with plaintiff's argument on this issue is that, while in her complaint plaintiff pled a cause of action for *negligent* infliction of emotional distress, in her appellate brief she argues that the landlord-tenant relationship gives rise to a cause of action for *intentional* infliction of emotional distress. The case law plaintiff cites in support of this argument also concerns the intentional tort. Since plaintiff has failed to adequately brief the issue of whether the charge of negligent infliction of emotional distress should have gone to the jury, we consider the argument waived. 134 Ill. 2d R. 341(e)(7).

■■■ Finally, plaintiff contends that the trial court erred in directing a verdict on count VI, which sought the return of plaintiff's security deposit. Plaintiff argues that defendant breached the warranty of habitability and that, therefore, she was entitled to move out of her apartment without forfeiting her security deposit. Defendant maintains that, since plaintiff breached her lease by moving out of her apartment and failing to pay rent for the month of January 1986, forfeiture of the security deposit was warranted and the court ruled correctly in directing a verdict on this count.

While it is true, as plaintiff argues, that the mere fact that a residence can be inhabited does not necessarily establish that the warranty of habitability has been satisfied (*Pole Realty Co. v. Sorrells* (1981), 84 Ill. 2d 178, 183), it is also true that to constitute a breach of the warranty any defect must be of such a substantial nature as to render the premises unsafe or unsanitary, and thus unfit for occupancy (*Glasoe v. Trinkle* (1985), 107 Ill. 2d 1, 13). The condition complained of must be such as to truly render the premises uninhabitable

in the eyes of a reasonable person. (*Glasoe,* 107 Ill. 2d at 14.) In addition, there must be notice of the alleged defects given by the tenant to the landlord and the landlord must have had a reasonable time within which to correct the alleged deficiencies. 107 Ill. 2d at 14.

Here, it is undisputed that plaintiff moved out of her apartment and failed to pay rent and that, under her lease, breach of the lease requires forfeiture of the security deposit. Under the facts of this case, we agree with defendant that the condition of plaintiff's apartment was not such that the warranty of habitability was breached, at least in the eyes of a reasonable person. Instead, we agree with the trial court's conclusion reached at the hearing on defendant's motion that plaintiff moved out of the apartment to avoid having to relive, emotionally, the sexual assault incident and not because of the condition of the apartment. We also note that there is nothing in the record to indicate that plaintiff requested repair of the window after defendant's initial repair or after the assault. Thus, defendant was not given any adequate opportunity to correct any alleged deficiencies either before or after plaintiff was assaulted. We conclude therefore that the court did not err in directing a verdict as to count VI.

For all of the reasons stated herein, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GEIGER and DUNN, JJ., concur.